THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CLEOTHIA HALL *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 84—807

Opinion filed December 9, 1987.—Rehearing denied January 19, 1988.

Steven Clark and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Craig M. Antas, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendants Cleothia Hall and Edward Thomas were convicted of murder and sentenced to extended terms of 80 years in the Illinois Department of Corrections. On appeal, both defendants essentially argue that the trial court erred in (1) denying their motions to suppress their pretrial statements, (2) allowing the admission of a witness' prior consistent statement to rebut defendants' charge of recent fabrication, and (3) sentencing defendants to the maximum extended term of 80 years. Defendant Thomas individually contends that the trial court erred in failing to quash his arrest for violation of his fourth amendment rights. Defendant Hall individually argues that (1) he was denied a fair trial due to the trial court's failure to *sua sponte* sever his trial from that of his codefendant Thomas or, in the alternative, (2) he was denied effective assistance of counsel by his attorney's failure to properly raise the issue of severance, and (3) the State violated Supreme Court Rule 412 (107 Ill. 2d R. 412) when it failed to disclose the existence of an out-of-court statement made by defendant. We affirm and remand this cause to the trial court for the issuance of a corrected mittimus.

The charges in this case arose from the murder of the victim, Kevin Tremble. Tremble was beaten and thrown down an elevator shaft on December 14, 1982. As neither defendant contends that his guilt was not established beyond a reasonable doubt, we shall set

forth only those facts relevant to the issues presented.

On December 13, 1982, Tremble was visiting with a friend, Barbara Hamner, at her apartment. Hamner's apartment was located at 2417 West Adams Street, Chicago. The apartment building is commonly known as part of the Robert Taylor Homes Public Housing Project. During the morning of December 13, Hamner gave Tremble $10 to purchase some beer. Shortly thereafter, Hamner asked defendant Thomas to find Tremble and tell him to also buy some hair grease.

Defendant Thomas met Tremble on the first floor of the building as he was returning with Hamner's beer. After being told that Hamner needed some hair grease, Tremble indicated that he would check in with her before returning to the store. At that point, defendant Thomas and Tremble began climbing the stairs to Hamner's apartment. While between the third and fourth floors, Tremble and defendant Thomas met Alvin Carter and Charles Dent coming down the stairs. Carter then grabbed Tremble in a "full nelson position" and told Dent to go through Tremble's pockets. Carter then took the money Dent found in Tremble's pockets and left the area.

Thereafter, Tremble returned to Hamner's apartment and explained what had occurred. Hamner then called the police. When the police arrived, Hamner accompanied them to Carter's apartment, but they were unable to locate Carter. However, while at Carter's apartment, Hamner told Carter's brother that if she did not get her money back she would press charges. Later that evening, Carter and Dent confronted Hamner at her apartment, where they also threatened Tremble for causing the police to be called.

On December 17, 1982, Tremble's body was found at the bottom of an elevator shaft in Hamner's building. According to an assistant Cook County medical examiner, the cause of Tremble's death was attributable to severe multiple injuries, particularly in the head, right shoulder and pelvic area caused by blunt trauma. Tremble had apparently been dead since December 14, 1982. At the time that Tremble's body was discovered, the police lacked any firm leads connecting defendants to the cause of Tremble's death.

Thereafter, on the evening of April 21, 1983, Detective Blomstrand of the Chicago police department, Area 4 Violent Crimes, received information from a Chicago police officer specializing in gang crimes that an inmate at the Cook County jail wished to speak to the police regarding a murder he allegedly witnessed. When Area 4 Violent Crimes Detectives Dahlberg and Blomstrand and gang crimes specialists Stein and Griffin arrived at the jail, they were escorted to an investigation room where they met with Louis Williams.

Our review of the record indicates that Williams informed the police officers that he had witnessed the murder of Tremble in December 1982. Williams explained that he had seen a group of men acting crazy in the stairwell at 2417 West Adams Street, Chicago. When Williams stopped to observe what was happening, he saw an individual known as "Minister" (Tremble) grabbed and either struck in the back with an object or stabbed. Williams then saw a man he knew as J.R. open the elevator doors so four other men could throw Tremble down the elevator shaft. According to Williams, after throwing Tremble down the elevator shaft, the men closed the elevator doors and returned to an apartment, laughing. Williams identified defendant Hall as the person he knew as J.R. from a group of black and white photos. Williams also identified defendant Thomas from a photograph as one of the men who had grabbed Tremble's arm and leg and assisted in throwing him down the elevator shaft. Williams also identified the other men involved in the murder. Williams explained that he knew the individuals involved in the murder because he had previously lived in the building for several months.

Following the interview with Williams, the officers effectuated the warrantless arrests of defendants Hall and Thomas for the murder of Kevin Tremble. Thereafter, both defendants gave statements confirming their presence at the scene of the murder.

Defendant Hall stated that on the morning of December 14, 1982, he went up to apartment 406, where he met with Alvin Carter, Charles Dent, defendant Thomas and Thomas' brother, Stevie. Later in the day, the men exited the apartment and were standing in the hall when Tremble walked by carrying a garbage can. As Tremble attempted to walk by, Carter jumped him and put him in a "full nelson" and Dent started slapping Tremble in the face and hitting him in the upper chest area. Defendant Hall further stated that he, along with Curtis Butts and defendant Thomas, thought Carter and Dent were "playing" with Tremble. So, defendant Hall also grabbed Tremble's arm and helped pick him up. However, when defendant Hall saw that Carter and Dent were serious, Butts and both defendants put Tremble down because they were nervous. Carter and Dent then pushed the victim down the elevator shaft.

Defendant Thomas' statement indicates that on the morning of December 14, 1982, he also went to apartment 406 at 2417 West Adams. When defendant Thomas entered the apartment he found Curtis Butts, Jeffrey Butts, Steven Thomas, and two women named Ree and Connie present. After defendant Thomas was in the room for a short period of time, defendant Hall knocked on the door. Thereafter,

defendant Thomas, Curtis and Jeffrey Butts, and Steven Thomas stepped outside the apartment where defendant Hall, Alvin Carter and Charles Dent were standing. At this time, Tremble was walking down the middle of the hallway carrying a garbage can. As Tremble approached, Carter grabbed him in a "full nelson," and Dent slapped Tremble. Defendants, along with Curtis Butts, then began to kick the victim. Defendants then dragged Tremble to his feet, after which defendant Hall pulled open the elevator doors and Carter threw the victim down the elevator shaft.

Defendants first argue that the trial court erred in denying their motions to suppress their pretrial statements on the basis that the police lacked probable cause to arrest them. Defendants essentially contend that because the information leading to their warrantless arrest was supplied by an informant of the criminal milieu, whose reliability had not been established, the police lacked probable cause. We find no merit in defendants' argument.

■■ The existence of probable cause cannot be decided on the basis of technical legal rules. Rather, such a determination must necessarily depend upon an analysis of commonsense factual and practical considerations. While the probable cause standard requires that a police officer have more than a mere suspicion, it does not require that the officer possess evidence necessary to obtain a conviction. To the contrary, probable cause for an arrest exists when the totality of the circumstances within the knowledge of the police officer at the time of the arrest would warrant a man of reasonable caution to believe that (1) an offense has been committed and (2) the person to be arrested was the perpetrator of the offense. *People v. Lekas* (1987), 155 Ill. App. 3d 391, 410, 508 N.E.2d 221, 234; *People v. Mitchell* (1984), 123 Ill. App. 3d 868, 873, 463 N.E.2d 864, 868-69.

■■ ■ While the veracity and reliability of an informant, along with the basis of the informant's knowledge, are highly relevant in assessing the value of the information received, these considerations are not "separate and independent requirements to be rigidly exacted in every case." (*Illinois v. Gates* (1983), 462 U.S. 213, 230, 76 L. Ed. 2d 527, 543, 103 S. Ct. 2317, 2328.) Rather, the status of an informant is merely one factor, the import of which is to be weighed and balanced within the totality of the circumstances. (*Mitchell*, 123 Ill. App. 3d at 875, 463 N.E.2d at 870; *People v. Cruz* (1983), 119 Ill. App. 3d 868, 879, 457 N.E.2d 1281, 1288.) Therefore, a warrantless arrest based on information supplied by an informant is justified if, given all the facts and circumstances present, there is a fair probability that the prospective arrestee has committed a crime. The duty of a reviewing

court is solely to ensure that there was a substantial basis for such a conclusion. (*Mitchell*, 123 Ill. App. 3d at 873, 463 N.E.2d at 869; *Gates*, 462 U.S. at 238-39, 76 L. Ed. 2d at 548, 103 S. Ct. at 2332.) A trial court's finding of probable cause will not be overturned unless it is manifestly erroneous. (*Mitchell*, 123 Ill. App. 3d at 875, 463 N.E.2d at 869.) When examining a probable cause ruling following a motion to suppress, a reviewing court may consider any evidence adduced at trial which provides assistance in the determination of probable cause. *Mitchell*, 123 Ill. App. 3d at 873, 463 N.E.2d at 869; *People v. Caballero* (1983), 102 Ill. 2d 23, 36, 464 N.E.2d 223, 229.

In Illinois, absent indications that an informant has been paid by the police, there is a presumption that he is an ordinary citizen whose information has inherent reliability. Therefore, the information supplied by such an informant is not subject to the same level of scrutiny as information received from a paid informant who is a member of the criminal milieu. (*People v. Mitchell* (1984), 123 Ill. App. 3d 868, 874-75, 463 N.E.2d 864, 870.) This is especially true where the individual providing the information was a victim of, or an eyewitness to, the crime. (*Mitchell*, 123 Ill. App. 3d at 875, 463 N.E.2d at 870; *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.) The fact that an informant is a suspect in an investigation, and may even have been taken into custody, is not a "determinative indicium" of his unreliability. *Mitchell*, 123 Ill. App. 3d at 875, 463 N.E.2d at 870; *People v. Cruz* (1983), 119 Ill. App. 3d 868, 879, 457 N.E.2d 1281, 1288.

Here, Williams voluntarily initiated the contact with Officers Dahlberg, Blomstrand, Stein and Griffin concerning his knowledge of Tremble's murder. Williams then provided a detailed account of the crime, and identified not only defendants and their role in the murder, but other individuals who were also ultimately charged with the crime as well. Additionally, Williams himself was never a suspect in Tremble's murder, nor was he ever threatened with or placed under arrest. Furthermore, the record is devoid of evidence that any promises were made in return for Williams' information.

Moreover, while we in no way minimize Williams' status as an inmate at the Cook County jail, we do not believe that it automatically classifies him as a person utterly devoid of credibility or akin to a professional informer. Even assuming that Williams' motive for cooperating with the police was questionable, we believe that his detailed eyewitness account of Tremble's murder adequately compensated for any deficiency in his reliability as an informant under the standard set forth in *Gates*. (*Gates*, 462 U.S. 213, 76 L. Ed. 2d 527,

103 S. Ct. 2317; see also *Mitchell*, 123 Ill. App. 3d at 875, 463 N.E.2d at 870.) Finally, we believe that the trial court's finding of probable cause and denial of defendants' motions to suppress their pretrial statements is supported by both the pretrial and trial testimony. We therefore find that the trial court properly denied defendants' motions to suppress their pretrial statements.

Defendants next contend that the trial court erred in allowing the admission of a prior consistent statement of a witness to rebut a charge of recent fabrication. We disagree.

The record reflects that the State's principal witness, Curtis Butts, testified that he was also arrested for the murder of Tremble on April 22, 1983. According to Butts' testimony, he gave two statements to the police on April 22, 1983, concerning the murder of Tremble. Butts' first statement implicated Alvin Carter, Charles Dent and both defendants in Tremble's murder. Butts made no mention of his participation in the murder at that time. However, later in the same day, Butts gave a second statement to the police in which he implicated himself and the other previously named individuals in Tremble's murder. This same statement was subsequently recorded by a court reporter with an assistant State's Attorney present.

At trial, Butts indicated that he had changed his statement because he needed to get it off his back, and because he was afraid that he would end up like Tremble. Then, over defendants' objections, the State showed Butts his written statement, which he identified. Butts testified that no promises were made or offered to him regarding his statement. On cross-examination, counsel for defendant focused on the fact that Butts had stated he had left himself out of his original statement to help himself. Defense counsel further emphasized that Butts was testifying pursuant to an agreement with the State.

Thereafter, on redirect examination, over defendants' objections, the trial court allowed the State to question Butts regarding the substance of his oral and written statements to the police and the assistant State's Attorney. The trial court determined that these statements were admissible to rebut defendants' assertions that both Butts' original statements to the police, and his trial testimony, had been fabricated as a result of his motive to help himself obtain a plea bargain agreement with the State.

In Illinois, it is well settled that prior consistent statements of a witness are admissible either to rebut a charge or an inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication. However, such prior consistent statements are admissible if the witness told the same story before the motive to testify

falsely came into existence or before the time of the alleged fabrication. *People v. Emerson* (1983), 97 Ill. 2d 487, 501, 455 N.E.2d 41, 47.

■ Here, the record reflects that the inference raised by defendants at trial was that Butts fabricated his statements to the police in order to gain an advantage for himself. However, it is clear that Butts' statement implicating himself and the other defendants in the murder was given approximately six months prior to the State's approaching him concerning a plea agreement. Moreover, we see no advantage to Butts' confessing to a crime he did not commit on the off chance that the State might offer him a plea bargain for his testimony. Such a contention is patently illogical. While Butts admitted that he was trying to help himself when he gave his first statement to the police, he later confessed to his participation in the murder of Tremble. We do not believe that a motive to fabricate existed at that time. We therefore conclude that Butts' prior consistent statements were admissible to rebut the inference that he was motivated to testify falsely and that his testimony was of recent fabrication.

Defendants next assign as error the trial court's imposition of an extended-term sentence of 80 years, the maximum sentence available for their convictions. Defendants contend that the trial court failed to consider their rehabilitation potential as evidenced by their lack of serious criminal records. We disagree.

Our review of the record indicates that defendant Hall was arrested for battery in 1980, failed to appear at his hearing and was ultimately arrested on a bond forfeiture warrant. Hall then pleaded guilty to the charge of battery and received supervision. Thereafter, he was arrested for theft in 1982. This charge was ultimately stricken off the call with leave to reinstate in September 1982. Defendant Hall was 26 years old at the time of Tremble's murder, had a past employment history totalling one year and was married with two children. Defendant Thomas was arrested for battery in 1981 and was sentenced to 10 days' time considered served. Defendant Thomas was 18 years old at the time of Tremble's murder, had not completed high school and had a previous employment history of three months. Thomas also admitted membership in the Black Gangster Disciples.

Here, the trial court found defendants guilty of first degree murder. Each defendant could have been sentenced to a term between 20 to 40 years for first degree murder (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a), 1005—8—1(a)(1)(a)) or to an extended term of not less than 40 years and no more than 80 years if factors in aggravation were present (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)(1)). The factors in aggravation that may be considered, if present, include that "the

offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2).) The trial judge found that this factor was present and sentenced each defendant to an extended term of 80 years for first degree murder.

■ According to Illinois law, the entire spectrum of facts surrounding an incident must be analyzed and evaluated to determine whether a defendant should receive an extended-term sentence. (*People v. Trimble* (1985), 131 Ill. App. 3d 474, 476, 475 N.E.2d 971, 973; *People v. Grady* (1982), 107 Ill. App. 3d 970, 977, 438 N.E.2d 608, 614; *People v. Devine* (1981), 98 Ill. App. 3d 914, 927, 424 N.E.2d 823, 832.) Clearly, the possibility of an offender's rehabilitation is not the only factor to be considered in imposing an extended-term sentence. Rather, the court is also to consider the seriousness of the offense charged and whether the need to protect the interests of society calls for a sentence of more severity. Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.1.

■ In the present case, defendants participated in the brutal beating of a man. Defendants then grabbed Tremble by his arms and legs and threw him head first down an elevator shaft. Under the facts of this case, we cannot say that the trial court abused its discretion in sentencing defendants to maximum extended terms of 80 years.

We next address defendant Thomas' argument that the trial court erred in failing to quash his arrest for violation of his fourth amendment rights under *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371. Defendant Thomas contends that his warrantless arrest was illegal because there were no exigent circumstances present, and therefore his subsequent pretrial statement was inadmissible as the fruit of his illegal arrest. We disagree.

Initially, as we have already determined that Williams' information was sufficient to provide the police with probable cause to arrest defendants, we need not address this aspect of defendant Thomas' argument. Moreover, the issue, contrary to defendant Thomas' contentions, is whether the police officers violated Thomas' fourth amendment rights when they arrested him in the doorway of his residence.

Our review of the record indicates that the evidence at the suppression hearing consisted of two separate and distinct versions of Thomas' arrest. According to the testimony of Detective Blomstrand, when he and the officers arrived at defendant Thomas' apartment they knocked on the door. As the officers were knocking at the door, the door to apartment 410 opened and a man looked out. The officers then indicated that they were looking for Edward Thomas. When the

man at the door identified himself as Edward Thomas, the officers placed him under arrest as he stood in the doorway. The officers had no warrant. Defendant Thomas, however, testified that the police arrested him inside of the apartment, rather than in the doorway. Defendant Thomas' mother corroborated his statement. Thereafter, following argument of counsel, the trial court stated:

"As I said, *** [defendant Thomas] came to the door and the police arrested him there. They had a right to do that. If they entered the apartment afterwards, they had already arrested him at the door."

The clear import of the trial court's ruling is that defendant Thomas' warrantless arrest was proper because he was arrested in his doorway. No dispute is raised regarding the trial court's determination that apartment 410 was defendant Thomas' residence for purposes of his arrest.

■■ ■ As a general rule, a person standing in the open doorway of his place of residence is deemed to be in a "public place" for purposes of the fourth amendment. (*United States v. Santana* (1976), 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406; *People v. Graves* (1985), 135 Ill. App. 3d 727, 730-31, 482 N.E.2d 223, 225.) However, for an arrest which occurs in an open doorway to be valid, it must be the result of proper police conduct rather than deception or coercion. Here, the trial court found that the officers knocked on the door of the apartment where defendant regularly resided and, upon hearing those knocks, defendant Thomas opened the door to apartment 410. Moreover, based on the testimony presented at the suppression hearing, the trial court determined that defendant Thomas was arrested in the doorway of the apartment, and that the officers did not cross the threshold to effectuate the arrest. We find nothing in the record which belies the trial court's assessment of the witnesses' credibility. We likewise find nothing in the record to reflect that defendants' arrest in his doorway was brought about by improper conduct of the police officers. (*Graves*, 135 Ill. App. 3d at 730-31, 482 N.E.2d at 225.) Therefore, we believe that the trial court correctly determined that the warrantless arrest of defendant Thomas in his doorway was valid as a matter of law. Accordingly, defendant Thomas' motion to suppress his pretrial statement as the result of an illegal arrest was properly denied.

We now turn to defendant Hall's arguments on appeal. Defendant Hall initially contends that he was denied a fair trial due to the trial court's failure to *sua sponte* sever his trial from that of his codefendant Thomas. Hall argues in the alternative that he was denied effec-

tive assistance of counsel as a result of his attorney's failure to properly raise the issue of severance. We find no merit in either of these arguments.

Initially, a motion for a separate trial of jointly indicted defendants is to be made prior to the commencement of trial. The motion must specifically demonstrate how the defendant is going to be prejudiced by a joint trial. A mere apprehension of prejudice is not sufficient. Moreover, the decision to grant a separate trial is discretionary with the trial court and will not be reversed absent an abuse of that discretion. *People v. Bean* (1985), 109 Ill. 2d 80, 92-93, 485 N.E.2d 349, 355; *People v. Lee* (1981), 87 Ill. 2d 182, 186, 429 N.E.2d 461, 463.

Generally, jointly indicted defendants are to be tried together unless fairness to one defendant requires a separate trial. (*Lee,* 87 Ill. 2d at 187, 429 N.E.2d at 463.) There are several instances that require jointly indicted defendants to be tried separately. First, a defendant may be denied his constitutional right of confrontation where a codefendant makes extrajudicial hearsay admissions that inculpate the defendant, the State introduces the admission as substantive evidence and the codefendant does not testify. (*Lee v. Illinois* (1987), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056.) Here, defendant Hall was not denied his constitutional right of confrontation; defendant Thomas testified at trial and was subject to cross-examination.

Secondly, prejudice may occur in a joint trial if a defendant's confession, which corroborates the confession of a nontestifying codefendant, is admitted as substantive evidence against the nontestifying defendant. This is true even if the jury is instructed that the confession is not to be considered as substantive evidence against the nontestifying defendant. This is also true even if the codefendant's corroborating confession is introduced against him. (*Cruz v. New York* (1987), 481 U.S. 1168, 95 L. Ed. 2d 162, 107 S. Ct. 1714.) This form of prejudice likewise did not occur in the joint trial of defendants Thomas and Hall.

Lastly, prejudice may occur when codefendants' defenses are so antagonistic to each other that one of the codefendants cannot receive a fair trial if tried jointly with the other defendant. This usually results when a codefendant takes the stand to accuse the other defendant of being the real perpetrator of the crime. While no confrontation problem exists, the procedure may be inherently unfair. (*People v. Lee* (1981), 87 Ill. 2d 182, 187, 429 N.E.2d 461, 463.) However, actual hostility must be present between the two defenses before

severance is required. *People v. Bean* (1985), 109 Ill. 2d 80 93, 485 N.E.2d 349, 355.

■■ In the present case, severance would have been required only if defendants' defenses were so antagonistic that a fair trial could not be assured. However, defendant Hall made no motion for a severance prior to trial or at any time during the trial. Rather, the issue was not raised until defendant Hall's post-trial motion wherein it was alleged that the court erred in not ordering a severance. The issue of prejudice cannot be raised for the first time by a post-trial motion. (*People v. Wilhoyt* (1980), 87 Ill. App. 3d 539, 543, 409 N.E.2d 162, 165; see also Ill. Rev. Stat. 1985, ch. 38, par. 114—8.) As a result, defendant Hall can now only assert that the trial court erred in failing to *sua sponte* sever his trial from that of codefendant Thomas.

■■ Here, based on our examination of the record, we find no evidence to support a motion for a severance in the first instance. Initially, both defendants Hall and Thomas testified at trial. Moreover, while both defendants admitted making their pretrial statements, each denied the truth of the statements and testified that the portions of their statements regarding Tremble's murder were untrue when made. Defendants further testified that they were neither present, nor had they participated in the murder of Tremble. We find nothing antagonistic about these defenses. Therefore, the trial court was under no duty to *sua sponte* effect a severance of this case. As a result, we likewise find no merit in defendant Hall's alternative argument that he was denied effective assistance of counsel as a result of his attorney's failure to properly raise the issue of severance.

■■ We now consider defendant Hall's contention that the trial court committed reversible error in allowing Chicago police officer Tondryk to testify over objection as to an out-of-court statement allegedly made by defendant Hall. We disagree.

At trial, on direct examination, defendant Hall denied that he was a member of the Black Gangster Disciples. On cross-examination, defendant Hall was questioned about a conversation that he had with Chicago police officers Tondryk and Bicek in the summer of 1982. When defendant Hall was asked if he had told the officers that he was a Disciple, defendant Hall said no. Thereafter, when the State attempted to have Officer Tondryk testify as a rebuttal witness concerning defendant Hall's denial of the conversation, defense counsel objected on the ground that the statement had not been disclosed in pretrial discovery in violation of Supreme Court Rule 412. (107 Ill. 2d R. 412(a)(ii).) The trial court overruled the objection and allowed Offi-

cer Tondryk to testify that defendant Hall said that he was a member of the Black Gangster Disciples.

Supreme Court Rule 412 requires that in a criminal prosecution, the State must disclose, upon defendant's request, any oral statement made by a defendant of which the State has knowledge. The purpose of the rule is to protect a defendant against surprise, unfairness and inadequate preparation. While compliance with the rule is mandatory, an exception does exist for those statements that the State is not aware of and which could not be discovered by the exercise of due diligence. (*People v. Patterson* (1981), 102 Ill. App. 3d 844, 847, 430 N.E.2d 574, 577.) However, even if it is determined that the State failed to comply with Rule 412, such noncompliance does not require reversal absent a showing of prejudice by the defendant.

In the present case, tne State asserted that it had "disclosed every statement that *** [it] was aware of as far as the case in chief." The State also denies any lack of diligence since defendant Hall made the statement to Officer Tondryk approximately six months prior to Tremble's murder. Moreover, while defendant argues prejudice and surprise, he took no action to alleviate this prejudice and surprise by requesting a continuance. Defendant Hall had the right to request an opportunity to investigate the matter. As defendant failed to avail himself of the opportunity to investigate, his contention of surprise and possible prejudice is negated. (See *Patterson*, 102 Ill. App. 3d at 847, 430 N.E.2d at 577.) As such, we do not believe that Officer Tondryk's reiteration of defendant Hall's statement of membership in the Black Gangster Disciples warrants a reversal in this case. Therefore, we find no error in the trial court's determination regarding this issue.

We next note that the State has conceded that the mittimus in this case must be corrected to accurately reflect that each defendant was convicted of one count of first degree murder, and sentenced to one extended-term sentence of 80 years. We therefore remand this cause to the trial court solely for the issuance of a corrected mittimus which will reflect the proper disposition of defendants' trial. We have considered the remaining issues raised by defendants on appeal, and find them to be without merit.

Accordingly, the judgment of the trial court is affirmed and this case is remanded solely for the issuance of a corrected mittimus.

Affirmed and remanded.

McNAMARA, P.J., and WHITE, J., concur.