THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY PATTERSON *et al.*, Defendants-Appellants.

First District (3rd Division)    Nos. 80-1636, 80-1779, 80-1843 cons.

Opinion filed December 16, 1981.

Weinberg & Weinberg, of Chicago, for appellant Larry Patterson.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant Eli Wilson.

David C. Thomas, of Chicago, for appellant Eddie Garlington.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and David A. Shapiro, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Defendants Larry Patterson, Eli Wilson, and Eddie Garlington were charged with the murder of Renell Hentley. After a trial without a jury, they all were found guilty of that crime. All three defendants were sentenced to 30-year terms. On appeal defendants contend that they were not proved guilty beyond a reasonable doubt; that the trial court erred in admitting a statement made by Garlington which was not included in the State's answer to defendants' discovery motion; that the court erroneously admitted two hearsay statements; and that the court erred in allowing a prosecutor with a prior professional relationship with Garlington to prosecute them.

Yvonne Amos, Garlington's girlfriend at the time of the events in question, was the principal State witness and testified that on January 18, 1979, the evening prior to Hentley's death, she was informed that Garlington's brother Reginald had been shot in a pool hall. (Reginald died and Garlington was a State witness in the successful prosecution of his two killers.) Amos spent that night at the Garlington home with several others, including Hentley and the defendants. At approximately 8 a.m. the following day Garlington instructed her to awaken Hentley and to instruct him to go to Garlington's bedroom. Hentley was followed into the room by defendants and Jimmie Key. Amos heard scuffling noises coming from

the bedroom, and she heard Hentley say that they had the wrong man. Garlington and Key came out of the bedroom two or three times. On one such occasion Garlington said, "It's going to be all right," to which Key replied, "We're going to take care of him." When the five men came out of the bedroom, Amos described Hentley as having his hair sticking up, a red face, wrinkled clothes, and looking "satisfied." She then saw Wilson, Patterson, Key and Hentley go out the back door. She did not see Garlington go out. About 20 minutes later the men returned without Hentley. One of them took off a black jacket and stuffed it in a box or behind some clothes. Amos testified that she had given several prior statements which conflicted with her trial testimony. She gave these statements out of fear and stated that she was telling the truth at trial.

Kenneth Green, a 12-year-old neighbor, testified for the State that at approximately 10 a.m. he saw five men emerge from Garlington's yard. He could identify only Hentley. One of the men punched Hentley while the others surrounded him. Green then saw the man wearing a black coat drag Hentley to the garage and strike him over the head with a bottle. At this point Green ran to a neighbor's home at which time he heard 5 or 6 shots. After a few minutes Green returned to the alley, where he observed a trail of blood.

Officer Anthony Barry of the Chicago Police Department testified that at 10:10 a.m. he found Hentley dead in the alley. He observed a trail of blood from the body to the alley behind the Garlington residence where he also found a broken bottle. Hentley had $105 in his pockets.

Donna Garlington, Garlington's sister, testified for the defense that Amos left the Garlington home at about 2 a.m. the morning of Hentley's murder and did not return until that afternoon or evening. She further testified that Hentley himself left the residence about 4:45 a.m. and did not return.

Lillian Ward, a funeral director, visited the Garlington residence to make funeral arrangements. She was there, on January 20, at 9:10 or 9:15 a.m. for about 30 minutes. The atmosphere was quiet, and she heard no fighting or scuffling. She also testified that her notes supported her time sequence.

We initially consider defendants' contention that the trial court committed reversible error in allowing Officer Edward Beale of the Chicago Police Department to testify over objection as to an out-of-court statement allegedly made by Garlington. Beale testified that Garlington, while at the hospital the night his brother was shot and killed, said to a friend, "Well, let's go, we'll take care of this, we don't need no police." The basis for the objection was that the statement was omitted from the State's answer to defendants' discovery motion in violation of Supreme Court Rule 412 (Ill. Rev. Stat. 1977, ch. 110A, par. 412(a)(ii)).

■■ In a criminal prosecution the rule requires the State to disclose, upon defendant's request, any oral statement made by the defendant of which the State is aware. The purpose of the rule is to protect a defendant against surprise, unfairness, and inadequate preparation. (*People v. Boucher* (1978), 62 Ill. App. 3d 436, 379 N.E.2d 339.) Compliance with the rule is mandatory (*People v. Musgray* (1976), 37 Ill. App. 3d 48, 344 N.E.2d 708), excusable only when the State was unaware of the statement prior to trial and could not have learned of it by the exercise of due diligence. (*People v. Shegog* (1976), 37 Ill. App. 3d 615, 346 N.E.2d 208.) The State asserts that it was unaware of the statement until after commencement of the trial, learning of it on Thursday evening after the trial had been recessed until Monday. The State denies any lack of diligence, pointing out that Beale's only connection with the Hentley murder was the fact that he investigated the murder of Garlington's brother on the previous evening.

■■ ■ Even if the State fails to exercise due diligence, noncompliance with Rule 412 does not require reversal absent a showing of prejudice. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) Where the court becomes aware of a defendant's surprise and potential prejudice and gives counsel an opportunity to investigate the matter adequately, defendant's failure to avail himself of that opportunity negates his contention of surprise. (*People v. Kradenych* (1980), 83 Ill. App. 3d 547, 404 N.E.2d 488.) In the present case defendants declined the trial court's offer of time to investigate the matter despite the State's assertion that it would be agreeable to any amount of time necessary. In this regard, defendants' reliance on *People v. Millan* (1977), 47 Ill. App. 3d 296, 361 N.E.2d 823, and *People v. Mourning* (1975), 27 Ill. App. 3d 414, 327 N.E.2d 279, is misplaced. In each of those cases prejudice was found where the defendant's request for a continuance was denied and only a short recess was offered. Here, the trial court did not err in permitting Officer Beale to testify as to the statement made by Garlington.

Defendants also contend that two hearsay statements made by Jimmie Key, who did not testify, were erroneously admitted into evidence.

Amos testified that on the evening after Hentley was killed she overheard a conversation between Garlington and Key in which Garlington stated that Hentley had betrayed his brother. Key replied, "I told you we would take care of him." The State argues that defendants waived this issue for purposes of appeal by failing to object at trial.

■■■ An objection to hearsay testimony must be made at the time of its introduction. The objection should designate the particular testimony considered objectionable and the specific reason for the objection. Failure to make a timely and proper objection or to move to strike the

testimony after its admission constitutes a waiver and cures the error, if any. (*People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.) In the present case defendants failed to object until after the State had elicited the conversation at issue and had completed another question and answer. At that time counsel merely expressed a continuing objection to all statements made by anyone other than defendants. Even if we assume this was a hearsay objection, it came too late. (*In re Duncan v. Harmon* (1979), 77 Ill. App. 3d 927, 397 N.E.2d 497.) Any error was waived.

■■ The second statement complained of was the remark Key made to Garlington that morning, "We're going to take care of him." This comment was made before the accused left the Garlington home with Hentley.

We hold that the statement was admissible under the co-conspirator exception to the hearsay rule. Under this exception statements of one co-conspirator, pursuant to or in furtherance of the conspiracy, are admissible against any other member of the conspiracy. (*People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215.) The State need not charge the crime of conspiracy so long as it makes an independent prima facie evidentiary showing of a conspiracy or joint venture. (*People v. Goodman*; *People v. Gray* (1980), 85 Ill. App. 3d 726, 410 N.E.2d 493.) We believe that the State offered sufficient independent evidence to make a prima facie case of conspiracy among defendants. Amos' testimony, corroborated by Green, in addition to the other admissible statements by Garlington and Key, did establish a prima facie showing that defendants were engaged in a common plan to achieve a criminal goal.

Defendants rely on *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, for their contention that admission of these two statements violated their sixth amendment right to confront witnesses. That case involved a confession admissible against the defendant who made it but which was inadmissible hearsay against his co-defendant although it inculpated him as well. The court focused on the substantial risk that the jury, despite instructions to the contrary, was unable to disregard the confession as to Bruton. The court held its admission violated Bruton's right to confront witnesses, but limited the impact of its decision to hearsay statements which do not qualify under an exception to the hearsay rule. *Bruton* is further distinguishable in that the inability of a jury to follow instructions is absent in the present case.

■■ Defendants also contend that the trial court committed reversible error in permitting assistant State's Attorney Ronald Guzman to prosecute the present case. The sole basis for defendants' argument is that Guzman also represented the State in the prosecution of the murder of Garlington's brother, a prior case in which Garlington testified for the State. Guzman's relationship with Garlington was never attorney-client in nature. Defend-

ants have not presented any other evidence which would infer a conflict of interest, and there is no merit in their claim of error. Cases cited by defendants for the proposition that it was error to permit Guzman to prosecute them all involved attorneys who acquired information from a party who sought their legal services and then participated in the prosecution of that party on charges arising out of the information acquired. *People v. Gerold* (1914), 265 Ill. 448, 107 N.E. 165; *People v. Rhymer* (1975), 32 Ill. App. 3d 431, 336 N.E.2d 203; *People v. Curry* (1971), 1 Ill. App. 3d 87, 272 N.E.2d 669.

We finally consider defendants' contention that they were not proved guilty beyond a reasonable doubt. In making this argument defendants stress several points: that Green's description of the men he saw in the alley is inconsistent with a description of defendants; that there was a substantial interval between the time Amos saw defendants depart with Hentley and the time Green witnessed the beating in the alley; that the testimony of the funeral director and Garlington's sister contradicted that of Amos; that Amos was an incredible witness; and that the State failed to rule out other reasonable hypotheses of innocence.

Green, who was himself 5'8" tall, described the men in the alley as being 6' tall. Defendants in fact range in height from 5'7" to 5'11". Considering that Green viewed the men from about 50 feet away, a difference of one to five inches in height is not so great as to be inconsistent with their actual appearance. Compare *People v. Kilgore* (1973), 15 Ill. App. 3d 862, 305 N.E.2d 328.

Likewise the time differential suggested by the witnesses is not so great as to create a reasonable doubt. Defendants' claim that 90 minutes to two hours elapsed between the time Amos saw defendants exit the Garlington home with Hentley and the time Green observed the men beating him is not supported by the evidence. Amos' testimony that she awakened Hentley at 8 a.m. was an estimation as to time. Furthermore, from her narration of ensuing events, it could be inferred that a substantial amount of time passed prior to defendants' exit with Hentley. Green testified that he started shoveling snow about 8 a.m., and he estimated that it was about 10 a.m. when he viewed the attack. In light of the fact that both Amos and Green were merely estimating as to time, their testimony was not contradictory. Any inaccuracy as to their time estimates was insufficient to destroy their credibility. Nor did the testimony of Lillian Ward, the funeral director, contradict that of the State witnesses as to time. Ward merely stated that she was at the Garlington residence from 9:15 to 9:45 a.m. and that during that time she heard no scuffling or shots. Amos and Green were unable to state exactly what time the altercation and shooting occurred, but that fact did not require the trial court to reject their testimony.

The only testimony which directly contradicts Amos' testimony is that of Garlington's sister. Defendants argue that because of that contradiction and because Amos gave conflicting statements on prior occasions her testimony was so incredible that it should be given no weight.

In a trial without a jury it is the province of the trial court to determine credibility and weight of testimony and to resolve inconsistencies therein. (*People v. Pagan* (1972), 52 Ill. 2d 525, 288 N.E.2d 102.) Since the trial court had an opportunity to observe both witnesses this court will not set aside judgment unless the proof of guilt is so unsatisfactory as to create a reasonable doubt of defendants' guilt. (*People v. Rosa* (1981), 93 Ill. App. 3d 1010, 418 N.E.2d 124.) While the evidence was circumstantial, it was not so unsatisfactory as to create a reasonable doubt of defendants' guilt.

Defendants correctly point out that where the evidence is entirely circumstantial, guilt must be so thoroughly established as to exclude other reasonable hypotheses. (*People v. Lewellen* (1969), 43 Ill. 2d 74, 250 N.E.2d 651.) This is not to say that the State must prove guilt beyond any possibility of a doubt (*People v. Williams* (1980), 85 Ill. App. 3d 850, 407 N.E.2d 608), nor must each link in the chain of circumstances be proved beyond a reasonable doubt in order to establish guilt. It is sufficient if all the evidence taken together satisfies the trier of fact beyond a reasonable doubt. (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.) The testimony of Amos and Green, together with the admissible statements and admissions, met that burden.

Garlington finally argues separately that since Amos did not place him with the other defendants and Hentley, the evidence is insufficient to sustain his conviction on an accountability theory. In order to establish accountability the State must prove beyond a reasonable doubt that defendant solicited, aided, abetted, agreed or attempted to aid another in the planning or commission of an offense; that this participation took place either before or during the commission of the offense; and that defendant had concurrent specific intent to promote or facilitate the commission of the offense. (*People v. Ware* (1980), 82 Ill. App. 3d 297, 402 N.E.2d 762.) The State has met its burden of showing specific intent when it has proved beyond a reasonable doubt that defendant shared the criminal intent of the principal or that there was a community of unlawful purpose. (*People v. Hill* (1977), 53 Ill. App. 3d 280, 368 N.E.2d 714.) Although mere negative acquiescence to another's actions is ordinarily insufficient to establish accountability (*People v. Gray* (1980), 87 Ill. App. 3d 142, 408 N.E.2d 1150), one may be held to aid or abet without actively participating in the overt act. *People v. Kessler* (1974), 57 Ill. 2d 493, 313 N.E.2d 29.

In the present case, the statements of Garlington and Key, coupled

with the acts of all the defendants at the Garlington residence on the morning of Hentley's death, suffice to show that Garlington shared with the other defendants a specific intent to accomplish an unlawful purpose. Whether that purpose encompassed Hentley's murder or was limited to a beating, all the defendants are accountable for the murder since it was committed in furtherance of their common purpose. *People v. Kessler.*

For the reasons stated, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

McGILLICUDDY and WHITE, JJ., concur.