THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT HUDSON, Defendant-Appellant.

Third District   No. 3—86—0593

Opinion filed October 5, 1987.—Rehearing denied November 13, 1987.

Lawrence Bapst, of State Appellate Defender's Office, of Springfield, for appellant.

Edward Petka, State's Attorney, of Joliet (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, the defendant, Robert Hudson, was convicted of murder. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(1).) He was subsequently sentenced to a term of imprisonment of 20 years. The defendant appeals. We affirm.

At trial, Brenda Miller testified that on March 27, 1986, she and

her friend Sammy Robinson drove from Chicago to Joliet in order to pick up their friends, the defendant and his brother Antoine Hudson, and then return to Chicago. While at the defendant's Joliet home, Brenda saw that the seats inside Antoine's car had been "burned up." As the four started their return trip, they passed what Brenda testified to be a blue car. At Antoine's request, Robinson stopped his car in front of the blue car. Brenda stated that Antoine wanted to ask the passenger in the blue car if he was going to pay for the damage to Antoine's car.

According to Brenda, the defendant and Antoine got out of the car and approached the blue car. The passenger got out of his car and Brenda heard him say something to the effect that the Hudsons had their guns and he had his gun. At this point, the passenger started shooting at Antoine. The gunfire lasted for several minutes, after which the defendant and Antoine got back into Robinson's car. As the Robinson car drove off, Brenda first noticed that the defendant had a gun in his hand. She was not sure whether the defendant had had a gun prior to the shooting. After they drove a block, the defendant got out of the car. Brenda, Robinson and Antoine were subsequently apprehended on their way to Chicago. Brenda stated that the police did not find any guns in the car.

Sammy Robinson testified that he and Brenda picked up only Antoine. When Robinson stopped his car near a Joliet housing project, he saw a gray Buick pull up next to him. Robinson saw that the passenger in the Buick had pulled a gun. The Buick then backed up. Robinson started to drive away when he heard someone shout at him. Robinson stopped, looked back and saw the Buick passenger standing beside the Buick. Antoine subsequently got out of the car. Robinson heard the passenger say both "You've got all yours, and I got mine," and "I have killed before, and I will kill again." The passenger then pointed a gun at Antoine. Robinson saw Antoine drop to the ground. Robinson drove off and pulled around the corner. He heard gunshots but did not see anyone shooting. Thereafter, Antoine got back into Robinson's car and they drove away.

Evonda Miller testified that on March 27, 1986, she was in her home in Joliet when she heard three gunshots outside. Evonda went to the front door and saw a gray Buick owned by a friend, Terry McNair. McNair was in the car, seated behind the steering wheel. Sitting on the passenger's side was another friend, Al Mabry. Evonda also saw a black male standing next to the Buick at the driver's side, shooting into the car. Evonda could not see the shooter's face. She observed the man fire about six shots and then run to a brown Cadillac,

which she later identified as Robinson's car. Evonda did not see how the incident began and did not see a gun in Mabry's hand.

Cassandra Miller, who lived with her sister, Evonda, testified that just before the instant shooting she was standing at her front door talking to McNair and Mabry, who were in McNair's Buick. She then saw two black males approach the Buick. The two men stood on either side of the Buick and began shooting at Mabry. Cassandra identified the defendant as the assailant standing on the driver's side. She saw after the incident that Mabry had a gun in his hand, but she did not know if he was holding a gun before the shooting. Cassandra stated that the reason she told the police that she did not witness the shooting was because she was afraid the defendant might harm her.

Terry McNair testified that he and Mabry had just stopped at the Miller residence to talk to Cassandra when he heard Mabry say, "They got pistols." McNair saw Mabry reach for a gun in his waistband. McNair stated that Mabry did not pull the gun. McNair then saw a man he later identified as the defendant walking toward his car on the driver's side. As he turned away to look at Mabry, McNair saw a gun being thrust through his window. McNair did not see the face of the person holding the gun. McNair then heard shots and ducked to the ground. After the shooting, McNair saw that Mabry, who had been hit several times by gunfire and was unconscious, had a gun in his hand. McNair admitted that he did not know whether Mabry had pointed a gun at someone before the shooting commenced.

Robert Brenczewski of the Joliet police department testified in impeachment that he interviewed Robinson on the day in question. According to Brenczewski, Robinson stated that prior to the shooting he picked up both the defendant and Antoine. Robinson also stated that both Hudson brothers approached McNair's car, with Antoine on the passenger's side and the defendant on the driver's side. Robinson further stated that Antoine was armed with a .25 or .32 caliber automatic weapon, and that the defendant had a .38 or .357 caliber revolver. According to Robinson, the defendant shot only at the passenger of the Buick.

Expert testimony established that Mabry died from two gunshot wounds to the head fired from a .38 caliber weapon. The gun found in Mabry's hand, a .22 caliber automatic gun, was determined to be fully loaded. The spent shell casings recovered from the crime scene were from a .25 caliber weapon and did not fit Mabry's gun. The guns used by the assailants were never found.

■■ ■ The defendant's first argument is that the State failed to prove beyond a reasonable doubt that he did not act in self-defense.

Specifically, the defendant argues that it was uncontradicted that Mabry was the first person to exhibit a weapon and start shooting. The defendant relies on Brenda Miller's testimony that Mabry was the first to open fire, and Robinson's testimony that Mabry pointed a gun at and threatened Antoine Hudson.

Self-defense is an affirmative defense. (Ill. Rev. Stat. 1985, ch. 38, par. 7—14.) Once the defendant raises it by presenting some evidence, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. (*People v. Evans* (1982), 104 Ill. App. 3d 598, 432 N.E.2d 1285.) Whether an act was justified under the law of self-defense is for the trier of fact and depends on all of the surrounding facts and circumstances. (*People v. Woods* (1980), 81 Ill. 2d 537, 410 N.E.2d 866.) Where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact. *People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623.

■ In the case at bar, the defendant's argument ignores Cassandra Miller's testimony that the defendant was one of the two men standing next to McNair's car, and that those two men, not Mabry, were the first to fire. Robinson's testimony that the defendant was not at the crime was impeached by his statements to Detective Brenczewski. Brenda Miller's testimony that Mabry started the gunfight was contradicted by evidence that Mabry's gun was found to be fully loaded. We find that the State presented sufficient evidence for the jury to conclude beyond a reasonable doubt that the defendant was not acting in self-defense.

■ ■ The defendant's remaining argument is that the trial court erred in allowing the State to obtain the testimony of an expert witness not disclosed to the defendant during discovery. During the trial, the defendant elicited testimony from a Joliet officer that a neutron activation analysis test had not been performed on Mabry to determine whether he had fired a gun. The State then requested leave to recall Robert Hunton, a firearms expert, to testify that the FBI would not perform such tests due to the nature of the ammunition in Mabry's gun. The court agreed with the defendant that such testimony constituted hearsay. The court subsequently granted the State's request for a recess to obtain an expert from the FBI, noting that the failure to perform the test was raised by the defendant. The court permitted the defendant the opportunity to interview the FBI expert and to obtain his own expert. The defendant argues now, as he did at trial, that he could have obtained an expert witness to refute the testimony of the State's expert had the FBI expert been disclosed prior

to trial. The defendant argues that he was surprised and therefore unable to adequately prepare his defense.

The State is not required to inform the defendant of a witness' name until it forms the intent to call him. (*People v. Shiflet* (1984), 125 Ill. App. 3d 161, 465 N.E.2d 942.) A trial court has not abused its discretion to allow an undisclosed witness to testify unless the defendant is surprised or prejudiced. *People v. Morales* (1982), 109 Ill. App. 3d 183, 440 N.E.2d 302.

■ From the record, it is clear that the State did not decide to call an expert witness from the FBI until after the defendant brought up the failure to perform the neutron activation analysis test. Furthermore, the defendant has failed to show how he was prejudiced. The court permitted the defendant to interview the FBI agent prior to the agent's testifying. The court stated that it would have permitted the defendant additional time to obtain an expert witness if the defendant had so requested. The expert's testimony that it was useless to perform the neutron activation test because of the type of ammunition in Mabry's gun simply negated the inference that the State failed to thoroughly investigate the case. In short, we find no abuse of discretion.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.