UNITED STATES of America ex rel.
Larry PATTERSON, Petitioner,

v.

Michael NEAL, Respondent.

No. 87 C 4502.

United States District Court,
N.D. Illinois, E.D.

Jan. 27, 1988.

Larry Patterson, pro se.

Kenneth A. Fedinets, Asst. Atty. Gen., Neil F. Hartigan, Atty. Gen., State of Ill., Chicago, Ill., for petitioner.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Larry Patterson, an inmate at Danville Correctional Center, serving a 30–year sentence for murder, petitions this court for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner claims his conviction was constitutionally infirm because (1) he was denied effective assistance of counsel, and (2) the state's attorney knowingly relied on perjured testimony to convict him. Danville Warden Michael Neal asserts that petitioner waived these claims because he did not present them in state court and has not shown cause for or prejudice from his failure to do so. Petitioner claims the cause-and-prejudice test is inapplicable to his claims and seeks summary judgment on this issue pursuant to Rule 56 of the Federal Rules of Civil Procedure. Petitioner also moves the court to appoint counsel for him for the current proceedings. For the following reasons, we hold petitioner has waived his second claim but is entitled to an evidentiary hearing on his claim that he was denied effective assistance of counsel at trial. We appoint counsel to represent petitioner at this hearing and stay our decision as to the availability of habeas relief pending its completion.

### PROCEDURAL HISTORY

After a bench trial in Cook County Circuit Court, petitioner was convicted of the 1979 murder of Renell Hentley. In May, 1980, petitioner and his co-defendants Eddie Garlington and Eli Wilson were sentenced to 30 years imprisonment. On appeal petitioner, represented by new counsel, presented the following issues for review:

(1) Whether the State proved LARRY PATTERSON guilty of Murder beyond a reasonable doubt where the only State's evidence linking LARRY PATTERSON to the crime was the thoroughly im-

peached and utterly worthless testimony of Yvonne Amos?

(2) Whether the trial court committed reversible error by admitting into evidence an out-of-court statement allegedly made by co-defendant Garlington which had not been included in the State's discovery?

(3) Whether the trial court committed reversible error in admitting the hearsay statements of Jimmie T.?

(4) Whether the trial court committed reversible error in allowing Mr. Guzman to prosecute the instant case?

(Resp. Exh. 1 at ii.) The appellate court considered the appeals of all three defendants and affirmed their convictions. *People v. Patterson*, 102 Ill.App.3d 844, 851, 430 N.E.2d 574, 580, 58 Ill.Dec. 542, 548 (1st Dist.1981).

Acting *pro se*, on February 4, 1982, petitioner sought leave to appeal to the Illinois Supreme Court. The record reveals no response to this motion, in which petitioner for the first time raised his ineffective-assistance-of-counsel claim (Resp. Exh. 3 at 2). Acting through the public defender, on December 28, 1982, petitioner filed a petition for post-conviction relief, in which he sought an evidentiary hearing on his ineffective-assistance claim and moved to substitute judges. Both motions were denied without an evidentiary hearing (Resp. Exh. 4 at 2).

In appealing the denial of his post-conviction motion, petitioner, again represented by the public defender, raised two issues:

I. Whether error occurred during LARRY PATTERSON's Post–Conviction Relief proceedings when the trial judge, who had presided over LARRY PATTERSON's original trial, denied LARRY PATTERSON's motion for substitution of judges?

II. Whether the trial judge erred when he dismissed LARRY PATTERSON's Petition for Post–Conviction Relief without first holding an evidentiary hearing concerning LARRY PATTERSON's allegations that his trial attorney

had not interviewed known alibi witnesses?

(Resp. Exh. 4 at 2.) The appellate court affirmed the denial of the post-conviction motion, and in so doing explicitly "address[ed] the merits of the [ineffectiveness] issue." *People v. Patterson*, No. 85–1225, slip op. at 3 (1st Dist. Sept. 10, 1986) (hereinafter "slip op.") [146 Ill.App.3d 1164, 110 Ill.Dec. 469, 511 N.E.2d 441 (table)].

Approximately three weeks later, on September 29, 1986, petitioner sought leave to appeal this affirmance and filed a *pro se* brief reasserting the two claims he had advanced in his appeal of the denial of post-conviction relief and raising other issues for the first time (Resp. Exh. 7). On December 4, 1986, the public defender petitioned for leave to appeal, claiming that it was error for the appellate court to dismiss petitioner's appeal for post-conviction relief without an evidentiary hearing (Resp. Exh. 6). On May 18, 1987, petitioner, acting *pro se*, sought habeas corpus relief (habeas petition).

## FACTS UNDERLYING PATTERSON'S CONVICTION [1]

Pursuant to 28 U.S.C. § 2254(d) the factual findings of the state court are presumed correct in a federal habeas corpus proceeding, *Lewis v. Lane*, 832 F.2d 1446, 1450 (7th Cir.1987), (*citing Sumner v. Mata*, 449 U.S. 539, 546–48, 101 S.Ct. 764, 768–70, 66 L.Ed.2d 722 (1981)), provided that these factual findings are fairly supported by the record. 28 U.S.C. § 2254(d)(8); *Taylor v. Lombard*, 606 F.2d 371, 375 (2d Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1346, 63 L.Ed.2d 781 (1980), *cited with approval in Sumner*, 449 U.S. at 547–48, 101 S.Ct. at 769–70. We thus adopt the following facts as stated in *People v. Patterson*, 102 Ill.App.3d at 845–46, 430 N.E.2d at 576–77, 58 Ill.Dec. at 544–45:

Yvonne Amos, [co-defendant] Garlington's girlfriend at the time of the events in question, was the principal State wit-

---

1. We do not find it necessary to review the trial transcript in ruling on this motion since the

parties' versions of the facts on which we base our decision are consistent.

ness and testified that on January 18, 1979, the evening prior to Hentley's death,[2] she was informed that Garlington's brother Reginald had been shot in a pool hall. (Reginald died and Garlington was a State witness in the successful prosecution of his two killers.) Amos spent that night at the Garlington home with several others, including Hentley and the defendants. At approximately 8:00 a.m. the following day Garlington instructed her to awaken Hentley and to instruct him to go to Garlington's bedroom. Hentley was followed into the room by defendants and Jimmie Key.[3] Amos heard scuffling noises coming from the bedroom and she heard Hentley say that they had the wrong man. Garlington and Key came out of the bedroom two or three times. On one such occasion Garlington said, "It's going to be all right," to which Key replied, "We're going to take care of him." When the five men came out of the bedroom, Amos described Hentley as having his hair sticking up, a red face, wrinkled clothes, and looking "satisfied." She then saw Wilson, Patterson, Key and Hentley go out the back door. She did not see Garlington go out. About 20 minutes later the men returned without Hentley. One of them took off a black jacket and stuffed it in a box or behind some clothes. Amos testified that she had given several prior statements which conflicted with her trial testimony. She gave these statements out of fear and stated that she was telling the truth at trial.

Kenneth Green, a 12–year–old neighbor, testified for the State that at approximately 10:00 a.m. he saw five men emerge from Garlington's yard. He could identify only Hentley. One of the men punched Hentley while the others surrounded him. Green then saw the man, wearing a black coat, drag Hentley to the garage and strike him over the head with a bottle. At this point Green ran to a neighbor's home at which time he heard 5 or 6 shots. After a few minutes Green returned to the alley where he observed a trail of blood.

Officer Anthony Barry of the Chicago Police Department testified that at 10:10 a.m. he found Hentley dead in the alley. He observed a trail of blood from the body to the alley beyond the Garlington residence, where he also found a broken bottle. Hentley had $105.00 in his pockets.

Donna Garlington, Garlington's sister, testified for the defense that Amos left the Garlington home at about 2:00 a.m. the morning of Hentley's murder and did not return until that afternoon or evening. She further testified that Hentley himself left the residence about 4:45 a.m. and did not return.

(Footnotes added.) In affirming the denial of petitioner's post-conviction claims, the appellate court, in *People v. Patterson,* slip op. at 4, made the following additional factual findings which we adopt:

Defendant attached two affidavits to his post-conviction petition. Bernard Patterson stated that on January 20, 1979 he received a telephone call from defendant at about 8:35 a.m., saying that his car had stopped. The witness was with defendant sometime between 9:30 and 10:00 a.m., until 9:00 p.m. that evening. After filling defendant's car with gas they saw Walter Mackmore and his wife and offered them a ride. Walter and Justine Mackmore stated in their affidavit that on January 20, 1979, between 10:30 and 11:00 a.m., they were walking to the doctor's office when defendant offered them a ride.

## DISCUSSION

### A. Waiver

Respondent asserts that petitioner waived review of his claims of ineffectiveness and reliance on perjured testimony on direct appeal and that therefore *Wain-*

---

2. We assume a typographical error here as the evening prior to Hentley's death was January 19, 1987.

3. Presumably this is the Jimmie T. referred to in petitioner's direct appeal. *See* Resp. Exh. 1, at ii.

*wright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), bars him from obtaining federal habeas review of these issues. In *Wainwright,* the Supreme Court established the cause-and-prejudice test and held that the defendant, who had forfeited his right to appeal an issue directly or in collateral state proceedings by failing to comply with the state's contemporaneous objection rule at trial, could not raise the issue in federal habeas proceedings, absent a showing of cause for his failure to so comply and prejudice resulting from the alleged constitutional error. The Seventh Circuit Court of Appeals has held that the cause-and-prejudice test applies to failures to appeal as well as failures to object contemporaneously at trial. *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 361 (7th Cir.1983) *(en banc );* *United States ex rel. Williams v. Franzen,* 687 F.2d 944, 950 (7th Cir.1982) (citing *United States v. Norris,* 687 F.2d 899 (7th Cir.1982)).

Since petitioner did not raise the issue of the prosecutor's reliance on perjured testimony on direct appeal or at the post-conviction stage,[4] we apply the cause-and-prejudice test to determine whether this claim is entitled to habeas review. We agree with petitioner however that the cause-and-prejudice inquiry is inapplicable to his ineffective assistance charge since it was raised before and considered by the state court.

### 1. False Testimony

■ Applying the cause-and-prejudice test, petitioner's claim that the prosecutor relied on the perjured testimony of Yvonne Amos to convict him is easily resolved. In answering respondent's waiver argument, petitioner himself focuses on his ineffective claim and devotes only a one-sentence conclusory statement to his assertion that the false testimony issue was presented to yet not addressed by the state court (Pet. Mem. in Opp. at 11).

Petitioner offers no reason why he was unable to raise this claim until after the state court affirmed the dismissal of his post-conviction appeal and, under *Wainwright,* 433 U.S. at 91, 97 S.Ct. at 2508, we are precluded from reviewing it here. Perhaps petitioner means to suggest that due to the alleged ineffective assistance he received a viable claim was not raised. However, the record does not support this conclusion since the public defender representing him at the post-conviction stage demonstrated his competence in raising the issue of earlier counsel's ineffective assistance, as well as other grounds for appeal.[5]

Even without *Wainwright,* petitioner's claim that the prosecutor relied on perjured testimony is without merit. Such a claim is appropriate where the prosecutor withholds information that negates the guilt of the accused, or makes false factual statements or uses false evidence. *See Lewis,* 832 F.2d at 1459. Here the prosecutor did not withhold information. Both defense counsel and the court were aware of the conflicting statements made by Amos and, despite the conflicts, her trial testimony was believed. *People v. Patterson,* 102 Ill. App.3d at 846, 430 N.E.2d at 576, 58 Ill. Dec. at 544. While the prosecutor's conduct in presenting Amos' testimony was proper, defense counsel's failure to call the

---

**4.** Petitioner claims that he did raise this issue but that the state court did not review it. Thorough review of the record reveals, however, that petitioner did not bring this claim until approximately three weeks after the appellate court affirmed the dismissal of petitioner's post-conviction claims. Thus petitioner denied the state court of the opportunity to consider this claim and it is not preserved for review by this court in the current proceedings.

**5.** Indeed, later counsel's effectiveness is shown by his proper assessment of the claims best suited for post-conviction appeal. Pursuant to the Illinois post-conviction statute a claim of ineffective assistance of counsel is not waived simply because it is not raised on direct appeal. *Gornick v. Greer,* 819 F.2d 160, 161 (7th Cir. 1987); *United States ex rel. Tonaldi v. Elrod,* 782 F.2d 665, 668 (7th Cir.1986); *Perry v. Fairman,* 702 F.2d 119, 122–23 (7th Cir.1983). Since ineffective-assistance-of-counsel claims usually involve facts outside the record, the waiver doctrine is relaxed to allow post-conviction appeals based on these claims even if they were not presented on direct appeal. *Id.* Petitioner's claim that the prosecutor relied on perjured testimony does not benefit from similarly relaxed waiver rules and thus would not have provided a viable basis for post-conviction relief.

alibi witnesses, given Amos' conflicting statements and the importance of her testimony in incriminating petitioner, is questionable and bolsters petitioner's ineffective-assistance claim.

## 2. Ineffective Assistance of Counsel

■ Respondent claims that petitioner's reliance on state law to support his ineffective-assistance-of-counsel claim bars us from reviewing it now. We disagree. As noted earlier, petitioner's ineffective-assistance-of-counsel claim was properly raised in his post-conviction appeal. The appellate court reviewed its merits and in so doing applied a constitutional standard and relied on a Supreme Court case. *See People v. Patterson,* slip op. at 3–5. Thus, the state court indicated it was fully apprised of the constitutional dimensions of petitioner's claim and took the opportunity to apply constitutional principles to the alleged constitutional violation. *See United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 454 (7th Cir.1984) (constitutional claims not waived if presented to state court). This claim was not waived and therefore need not be subjected to the cause-and-prejudice analysis.

Moreover, counter to respondent's suggestion, a party is not required to rely on federal cases to alert a state court to constitutional issues. *Id.* A state court has not had a fair opportunity to consider alleged constitutional violations only if the arguments presented to it do not "(a) rel[y] on pertinent federal cases employing constitutional analysis; (b) rel[y] on state cases employing constitutional analysis in like fact situations; (c) assert[ ] the claim in terms so particular as to call to mind a specific right protected by the Constitution ... [or] (d) alleg[e] a pattern of facts that is well within the mainstream of constitutional litigation...." *Id.* (citation omitted). Further, there is precedent for the proposition that lack of adequate counsel constitutes a *per se* violation of the Sixth Amend-

ment. *See, e.g., Nelson v. Smith,* 504 F.Supp. 1139, 1145 (E.D.N.Y.1981) (failing to investigate in a timely manner alibi defense in murder case demonstrates ineffective assistance of counsel and violates Sixth Amendment), *aff'd mem.,* 659 F.2d 1061 (2d Cir.1981). *See also Rummel v. Estelle,* 590 F.2d 103, 105 (5th Cir.1979) (*per curiam* ) (assuming constitutional nature of ineffective-assistance-of-counsel claim).

Since the state court recognized the constitutional nature of petitioner's ineffectiveness claim, we need not determine whether such a claim is inherently constitutional. We do, however, question the likelihood of situations arising in which an ineffective-assistance-of-counsel claim will not bring to mind constitutional concerns.

## B. Applying Strickland

In affirming the dismissal of petitioner's ineffective-assistance-of-counsel claim, the appellate court applied the inquiry outlined in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland, id.* at 687, 104 S.Ct. at 2064, the Supreme Court established a two-part test for evaluating whether an attorney's assistance was so ineffective that the defendant he represented was deprived of his Sixth Amendment right to counsel. The analysis involves two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id., quoted in United States v. Noble,* 754 F.2d 1324, 1335 (7th Cir.), *cert. denied,* 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985).[6] Petitioner must affirmatively es-

---

**6.** Petitioner argues that the state court applied an unconstitutional "would have been different" standard, rather than the proper "reasonable probability" standard. In fact, *Strickland,* 466

U.S. at 694, 104 S.Ct. at 2068, includes both formulations and provides that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

tablish the performance and prejudice elements of the *Strickland* analysis since

> [u]nless the defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064, *cited in United States ex. rel. Cross v. De Robertis*, 811 F.2d 1008, 1013 (7th Cir.1987).

■ The appellate court held that petitioner had not been sufficiently prejudiced by his attorney's failure to interview alibi witnesses, and an evidentiary hearing on the claim was not necessary. *People v. Patterson*, slip op. at 3–5. While we are instructed by 28 U.S.C. § 2254(d) to adopt the state court findings of fact for purposes of the current habeas proceedings, we are not similarly bound by state court conclusions as to mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *United States ex rel. Ross v. Franzen*, 668 F.2d 933, 937–38 (7th Cir. 1982). In *Strickland*, the Supreme Court stated explicitly that "both the performance and prejudice components of the effectiveness inquiry are mixed questions of law and fact." 466 U.S. at 698, 104 S.Ct. at 2070. Thus, the state court's conclusion that petitioner was not prejudiced by counsel's failure to interview alibi witnesses is not controlling here. For the following reasons we hold that an evidentiary hearing is necessary to determine whether effective counsel was rendered.

**1. Prejudice**

Petitioner's ineffective-assistance claim is based on his trial counsel's failure to interview alibi witnesses Bernard Patterson and the Mackmores. We begin by addressing the issue of prejudice since, if petitioner was not prejudiced by this alleged defect in counsel's performance, we need not rule definitively on the question of the effectiveness of this performance. *See Lewis*, 832 F.2d at 1459-60; *Shepard v. Lane*, 818 F.2d 615, 620 (7th Cir.) (collect-

ing cases), *cert. denied,* —— U.S. ——, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987). To demonstrate prejudice,

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

The facts described in *People v. Patterson,* 102 Ill.App.3d at 846, 430 N.E.2d at 577, 58 Ill.Dec. at 545, state that Kenneth Green testified that the outdoor attack on Hentley began at approximately 10:00 a.m. Police Officer Barry testified that he found Hentley dead at 10:10 a.m. on January 20, 1979, in the alley beyond the Garlington home. *Id.* In his affidavit, Bernard Patterson stated that he was with petitioner from between 9:30 and 10:00 a.m. on January 20, when he met petitioner at 76th and Halsted, until 9:00 p.m. that evening (Pet. Exh. 1). Justine and Walter Mackmore submitted an affidavit stating that petitioner and Bernard Patterson gave them a ride from 76th and Halsted to their doctor's office between 10:30 and 11:00 a.m. on January 20, 1979 (Pet. Exh. 2).

In reviewing the denial of post-conviction relief, the appellate court concluded that "[t]he information in the affidavits [did] not necessarily ... provide defendant with an alibi" since "it [was] entirely possible that Patterson met [petitioner] at approximately 10:00 a.m. and picked up the Mackmores between 10:30 and 11:00 a.m." *People v. Patterson,* slip op. at 5. The record does not reveal the proximity of the Garlington home to 76th and Halsted, and therefore it is unclear whether the appellate court's hypothetical rendition of the facts is logistically possible. In any case, if Bernard Patterson had testified at trial that he had been with petitioner on 76th and Halsted from between 9:30 and 10:00 a.m., and this

---

result of the proceeding would have been different." While the Court in *Strickland* concentrated on—by defining precisely—the reasonable probability part of the prejudice component, *id.,*

defendant's claim that the appellate court applied a constitutionally impermissible standard in considering his claim under *Strickland* is without merit.

testimony had been corroborated, in part, by the Mackmores, then this testimony would have provided petitioner an alibi since, according to Green, the attack on Hentley began at 10:00 a.m. If the jury had believed the testimony of these witnesses, then petitioner would presumably have been acquitted.

A complete alibi should ordinarily meet the prejudice requirement of *Strickland,* but if the evidence against the defendant is "overwhelming," a deficient performance of counsel that would otherwise be deemed prejudicial might fail to produce a reasonable probability of prejudice. *United States ex rel. Kleba v. McGinnis,* 796 F.2d 947, 959 (7th Cir.1986) (Cudahy, J., dissenting) (citing *Strickland,* 466 U.S. at 700, 104 S.Ct. at 2071; *Keys v. Duckworth,* 761 F.2d 390, 394 (7th Cir.1985) (*per curiam*)). A thorough review of the record reveals that the evidence against petitioner is not overwhelming.

Yvonne Amos, then the girlfriend of co-defendant Garlington, was the only witness to specifically identify petitioner as a defendant in the murder of Hentley.[7] She testified that she saw petitioner, the other defendants and Hentley leave through the Garlington's back door sometime after 8:00 a.m. on January 20. *People v. Patterson,* 102 Ill.App.3d at 845–46, 430 N.E.2d at 576, 58 Ill.Dec. at 544. Between 8:00 a.m., when she woke Hentley up, and the time the men left through the back door, the defendants and Hentley were in a bedroom with the door closed. *Id.* It is unclear from Amos' testimony how long the men stayed in the bedroom and when they left the house and then returned without Hentley. If these events occurred over an extended period of time, then it is conceivable that petitioner had left the Garlington home before Hentley was killed.

Kenneth Green did not directly identify petitioner, but testified that at approximately 10:00 a.m. he saw five men, including Hentley, emerge from the Garlington yard. *Id.* 102 Ill.App.3d at 846, 430 N.E. 2d at 577, 58 Ill.Dec. at 545. Green testified that one man punched Hentley and one man wearing a black coat hit Hentley over the head with a bottle. *Id.* Green then left the scene and heard shots while running to the home of a neighbor. *Id.* While Green's general description of five men comports with Amos' testimony about the number of men who left the Garlington home with Hentley, it is possible that petitioner was not among the five and was instead with Bernard Patterson at the time Hentley was murdered. *See* Pet. Exhs. 1, 2.

There were no eyewitnesses to the shooting and no witness identified petitioner as one of the men in the alley with Hentley when he was murdered. Since the alibi witnesses may have provided information as to petitioner's whereabouts at the time of the murder, their non-appearance at petitioner's trial undermines our confidence in its outcome and petitioner has made out a claim of prejudice (*see Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068) sufficient to merit an evidentiary hearing on this issue.

**2. Performance**

Recognizing that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," *id.* at 689, 104 S.Ct. at 2065, the Supreme Court has instructed that only acts or omissions outside "the wide range of professionally competent assistance" will be deemed unreasonable. *Id.* at 690, 104 S.Ct. at 2066, *quoted in Lewis,* 832 F.2d at 1461–62. In determining whether counsel's conduct in this case was reasonable, we consider counsel's overall performance before and during trial. *See Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986).

Petitioner claims that the alibi witnesses "were available and willing to testify" and that trial counsel knew about them (Mem. in Sup. of Habeas Corpus at 7, 16). Since the record indicates that petitioner knew all

---

7. While the trial judge assessed Amos' credibility and presumably believed her testimony, the appellate court did note that Amos had submitted conflicting statements during the grand jury and trial proceedings.

three witnesses,[8] presumably their full names were available to him and thus accessible to trial counsel. *Cf. Kleba*, 796 F.2d at 956–58 (counsel's failure to investigate whereabouts of witness known only as "Candy" does not constitute deficient performance). There is no evidence in the record that petitioner is responsible for counsel's failure to locate the alibi witnesses. *Cf. id.* at 957.

Most importantly, there is no indication that counsel made any attempt to interview the alibi witnesses. *Cf. Lewis*, 832 F.2d at 1462 (witnesses failed to keep numerous appointments made by attorney).

> Though there may be unusual cases when an attorney can make a rational decision that investigation is unnecessary, as a general rule an attorney must investigate a case in order to provide minimally competent professional representation.

*Crisp v. Duckworth*, 743 F.2d 580, 583 (7th Cir.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985). We do not second-guess counsel's professional judgment, tactical decisions and chosen trial strategy, *see United States v. Zylstra*, 713 F.2d 1332, 1338–39 (7th Cir.), *cert denied*, 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed. 2d 344 (1983), but assess counsel's performance from his perspective at the time in question. *Kimmelman*, 106 S.Ct. at 2589 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). While the affidavits petitioner attaches to his habeas memorandum (Exhs. 1, 2) reveal generally what testimony these witnesses would have offered, there is no indication that at the time counsel was preparing petitioner's case he was aware of the content of this testimony or that he had assessed the credibility of these witnesses and decided that their testimony would be damaging. Petitioner claims, and the affidavits support his assertions, that Bernard Patterson would have testified that he was with petitioner during the time that Hentley was murdered, and the Mackmores would have sworn that they were with both men at a location different from the Garlington home shortly after the time Hentley was murdered. We do not know what these witnesses will reveal yet we assess the need for a hearing based on petitioner's assertions and affidavits and we refuse to foreclose, without a hearing, the possibility that their testimony will support his claims.

The appellate court that reviewed the denial of petitioner's post-conviction appeal assumed that trial tactics led counsel to conclude that the alibi testimony "would not be helpful to [him]." *People v. Patterson*, slip op. at 5. However, there is no indication that counsel had any contact with these witnesses. While counsel is not required to "track down every lead ... or personally investigate every evidentiary possibility before choosing a defense and developing it," *Sullivan v. Fairman*, 819 F.2d at 1392, the alibi defense was apparently the only one offered by counsel at trial.[9] *See Kleba*, 796 F.2d at 961 (Cudahy, J., dissenting); *United States ex rel. Cosey v. Wolff*, 727 F.2d 656, 658 & n. 3 (7th Cir.1984) (failure to investigate only defense less likely to be reasonable than failure to investigate one of many defenses), *overruled in part on other grounds, United States v. Payne*, 741 F.2d 887, 891 n. 4 (7th Cir.1984); *Keys*, 761 F.2d at 392 (same). Counsel did not appear to have chosen a non-alibi trial strategy, and thus his failure to interview the witnesses necessary to establish petitioner's only defense may fall below the level of reasonable professional assistance.

## C. Need for Evidentiary Hearing

The appellate court concluded that no evidentiary hearing was required to deter-

---

**8.** Petitioner knew how to reach Bernard Patterson by telephone, *see* Pet. Exh. 1, and, given the fact that they have the same last name, petitioner and the witness may be related. Petitioner and/or Bernard Patterson knew the Mackmores well enough to offer them a ride, and the Mackmores knew either or both of these men well enough to accept. *See* Pet. Exh. at 2.

**9.** According to petitioner's memorandum, trial counsel announced that an alibi defense would be presented, though no witnesses were called to establish this defense (Mem. in Sup. of Habeas Corpus at 16).

mine whether petitioner received the effective assistance of counsel to which he was entitled. We disagree.

Where material facts were not adequately developed at the state court hearing, the petitioner is entitled, under both 28 U.S.C. § 2254(d) (1982) and *Townsend v. Sain*, 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed. 2d 770] (1963), to an evidentiary hearing in federal district court, provided that the failure to develop the state court record was not due to inexcusable neglect or deliberate bypass.

*Rogers v. Israel*, 746 F.2d 1288, 1295 (7th Cir.1984) (parallel citations omitted). It is clear from the record and the previous discussion that the content of the alibi witnesses' testimony and the extent of counsel's pretrial preparation constitute issues material to petitioner's constitutional claim. The state court record was not developed more fully because the reviewing state court held that an evidentiary hearing was not required. Therefore, no inadvertent or deliberate bypass by petitioner contributed to the paucity of the factual development of these issues.

Nothing in the record reveals why counsel stated he would present an alibi defense but failed to call any witnesses. We cannot determine whether counsel made any attempt to locate the alibi witnesses, whether counter to petitioner's contention these witnesses were interviewed and dismissed as incredible, or whether they ever met with counsel. Whether and to what extent counsel prepared for petitioner's trial simply is not evident. Testimony of trial counsel may well shed light on whether he conducted a reasonable investigation in preparing petitioner's case.

The full testimony of the alibi witnesses has yet to be revealed. Without their testimony it is impossible for us to determine whether it would have been believed, *cf. Sullivan v. Fairman*, 819 F.2d at 1392, and therefore whether petitioner was prejudiced by its exclusion. Testimony by trial counsel and the alibi witnesses will presumably enable the court to accurately evaluate the adequacy of the representation afforded petitioner and determine whether he is entitled to habeas relief.

## CONCLUSION

For the foregoing reasons, we hold that petitioner waived his claim that the prosecutor relied on false testimony to convict him by failing to raise it in state court, but that petitioner's ineffective-assistance-of-counsel claim is not similarly waived. We will hold an evidentiary hearing, at which time testimony of trial counsel and alibi witnesses Bernard Patterson and Walter and Justine Mackmore will be heard. We appoint counsel to represent petitioner during this hearing and will determine whether petitioner is entitled to habeas relief once the hearing is complete.