the rules enunciated in *People v. Ward* (1975), 61 Ill. 2d 559, 388 N.E.2d 171, and *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322. Thus, the trial court failed to exclude the doctor's testimony concerning the call he purportedly made to the Mayo Clinic.

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN WILSON, Defendant-Appellant.

Third District   No. 3—87—0676

Opinion filed September 26, 1988.—Rehearing denied October 24, 1988.

Gary R. Peterson, of State's Appellate Defender's Office, of Springfield, for appellant.

Edward F. Masters, State's Attorney, of Joliet (Gerald P. Ursini, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

This case is on appeal after a retrial which ended in the defendant's conviction for the murders of Ralph Dixon and Crystal Knight. The defendant was sentenced to natural life imprisonment. On appeal, he argues that the trial court's failure to either bar a witness from testifying for the State or grant defense counsel's motion for continuance was an abuse of discretion. We affirm.

Clifford Horne and the defendant, Melvin Wilson, were charged by indictment with the murders of Ralph Dixon and Crystal Knight. Horne entered a negotiated plea and received concurrent 25-year sentences of imprisonment for rape and murder in exchange for his testimony against Wilson. The first jury trial ended when a mistrial was declared. Following the second jury trial, Wilson was found guilty of both murders. This court reversed and remanded for a new trial after finding that the trial court excluded relevant, material evidence. (*People v. Wilson* (1986), 149 Ill. App. 3d 293.) The second retrial com-

menced on August 19, 1987.

On August 18, 1987, an assistant State's Attorney from Will County interviewed Bobby Tate, an inmate in custody of the Illinois Department of Corrections, and determined it would be necessary to call him as a witness at Wilson's trial. The prosecutor telephoned defense counsel that afternoon to notify him of his intent to call Tate as a witness. On August 19, prior to the beginning of trial, the prosecutor sought leave to file a supplemental list of witnesses which included Tate's name, along with a supplemental notification of statements of the defendant. The discovery document indicated that Tate would testify that while he and the defendant were cellmates, the defendant confessed to the murders of Dixon and Knight, but indicated he planned to place the blame on someone else. The court granted the motion to file supplemental discovery.

Defense counsel then moved to exclude Tate's testimony, suggesting that the prosecutor might previously have known of Tate and his possible testimony, but failed to provide the discoverable information to defense counsel until the day before the trial. Defense counsel also requested sanctions be imposed pursuant to Rule 415 (107 Ill. 2d R. 415(g)). The prosecutor acknowledged that sometime previous, the Cook County State's Attorney's office forwarded a letter Tate sent to that office indicating that he had information about the defendant and a murder. The prosecutor also informed the court that he spoke with Tate for the first time on August 18, and no one from the Will County State's Attorney's office had spoken with Tate prior to that date. Finally, the assistant State's Attorney reiterated that defense counsel was informed about Tate orally on the day he was interviewed and the prosecutor reduced the information to writing and presented it to defense counsel the next morning, August 19.

The trial court noted that a criminal investigation never stops and that in this case, the prosecutor immediately informed defense counsel of the new information as soon as he received it. The court then denied the motion for sanctions.

Defense counsel next moved for a continuance to allow time to investigate the matters set forth in the State's supplemental discovery. The prosecutor indicated the State would not object to defense counsel's investigator interviewing Tate, but would not agree to a continuance. The court denied the motion for a continuance.

On August 21, 1987, Tate was transported to Will County and was interviewed by defense counsel and his investigator. The assistant State's Attorney who was present during the interview informed the court that Tate answered all questions which defense counsel and the

investigator asked.

On August 24, 1987, following selection of the jury, defense counsel moved for a mistrial. The defendant's attorney alleged that the State became aware that Tate was a potential witness in May of 1987. He also stated that follow-up investigation was necessary but that because the investigator for the public defender's office had a full case load, an appropriate investigation could not be completed while the trial was proceeding. The court inquired whether defense counsel was satisfied and had enough time to interview Tate, and defense counsel stated he assumed he had enough, but indicated concern in the event new matters came up. The court stated it would have Tate returned to Will County any time at defense counsel's pleasure or convenience. The trial judge then examined the investigator's list of cases and discovered that the first case on the list scheduled to go to trial, the Davis case, was assigned to him. Noting that the defendant's case arose in 1984, long before other cases on the investigator's list, the judge then suggested that the investigator take care of the defendant's case first, and stated he would personally grant a continuance in the Davis case if the investigator did not have time to complete his investigation. The court denied the motion for a mistrial, again stating, "I'll take care of the Davis case."

The jury trial then began. The defendant states that the prosecution's evidence was essentially the same as it had been in the prior trial, except that Bobby Tate's testimony was offered. Tate testified that he and the defendant had been cellmates at Menard Correctional Center for several weeks. He stated that while they were incarcerated together, he and the defendant engaged in many conversations about the defendant's case and that the defendant admitted his involvement in the murders of Dixon and Knight. Tate further stated that the defendant planned to prove that he was on a military base when the crimes were committed and intended to place the blame on a man who drove from Miami with the drugs which were taken from Dixon after he was murdered. On cross-examination, Tate testified that in May of 1987, an individual he could not identify contacted him at the correctional facility and asked if he would speak with an assistant State's Attorney regarding the case, which Tate agreed to do. He stated that he first spoke with the assistant State's Attorneys from Will County in the week preceding the trial.

Wilson testified on his behalf and denied any involvement in the murders. The defense also offered testimony which, in the prior appeal, this court held was improperly excluded. As noted previously, the jury found the defendant guilty of the two murders and he was sen-

tenced to natural life imprisonment. This appeal followed.

The defendant alleges that the State acted in bad faith and in violation of Supreme Court Rule 412 by waiting until the day before trial to announce that Bobby Tate would testify and to reveal the substance of the defendant's statement to Tate. Under these circumstances, the defendant argues, the trial court's failure to either bar Tate's testimony or grant a continuance constituted an abuse of discretion. We disagree.

■ In a criminal prosecution, Supreme Court Rule 412(a)(i) requires the State, upon the defendant's request, to disclose the names of the witnesses it intends to call at trial. Supreme Court Rule 412(a)(ii) requires the State, at the defendant's request, to disclose the substance of any oral statements made by the accused, and a list of witnesses to the making and acknowledgment of such statements. The purpose of the rule is to protect the defendant from surprise and afford time for adequate preparation. (*People v. Bailey* (1982), 103 Ill. App. 3d 503, 505.) Compliance with Rule 412(a)(ii) is mandatory, and noncompliance is excusable only when the State was unaware of a witness' statement prior to trial and could not have learned of it by the exercise of due diligence. (*People v. Patterson* (1981), 102 Ill. App. 3d 844, 847.) Finally, even if the State fails to exercise due diligence, noncompliance with Rule 412 does not require reversal absent a showing of prejudice. *Patterson*, 102 Ill. App. 3d at 847.

■ The parties also acknowledge that it is within the discretion of the trial court to allow a previously unlisted witness to testify. The State points out that there is no duty to inform the defendant of a witness' name until it forms the intent to call him. (*People v. Hudson* (1987), 161 Ill. App. 3d 447, 452.) The prosecutor stated that he did not know of the substance of Bobby Tate's statement or form the intent to call him until August 18, when Tate was first interviewed by the assistant State's Attorneys. The prosecutor notified the defendant of Tate's testimony that afternoon. The defendant maintains, however, that the trial court should have excluded the testimony because the State knew of and had a duty to disclose the substance of Tate's statement as soon as it received Tate's letter, which indicated that Wilson admitted to the murders.

■ Based on our review of the record, we find that the State's failure to inform defense counsel of the defendant's alleged admission upon receipt of Bobby Tate's letter, which clearly stated that Wilson admitted to the murders on more than one occasion, was a violation of Rule 412(a)(ii). The Illinois Supreme Court has stated that the rule encompasses not only formal statements made to authorities but also

statements made to anyone which might have bearing on the defendant's guilt. (*People v. Weaver* (1982), 92 Ill. 2d 545, 558.) The real question here is whether the trial court abused its discretion in refusing to either bar Tate's testimony or grant a continuance. We find that the court did not abuse its discretion.

■ Supreme Court Rule 415(g) (107 Ill. 2d R. 415(g)) provides that if a trial court becomes aware that a party has failed to comply with a discovery rule, the court may order the party to permit the discovery of information not previously disclosed, grant a continuance, exclude the evidence, or enter such other order it deems just. The judgment of a trial court is given great weight and a reviewing court will find an abuse of discretion only when a defendant is prejudiced by a discovery violation and the trial court fails to eliminate that prejudice. (*Weaver*, 92 Ill. 2d at 559.) Although the trial court here did not conclude that the State violated a discovery rule, it nonetheless took steps to ensure that the defendant had an ample opportunity to investigate and impeach Tate's statement. These steps eliminated any prejudice to the defendant.

■ As set forth above in the statement of facts, prior to trial, the court inquired whether defense counsel had been afforded sufficient time to interview Tate. Defense counsel indicated to the court that he had interviewed Tate three days earlier and was satisfied with the interview, and the prosecutor stated that Tate had cooperated fully with defense counsel. Additionally, the court stated Tate would be returned to Will County any time defense counsel so desired. Finally, in response to defense counsel's assertion that the investigator's case load prevented a complete investigation, the trial judge promised to grant a continuance in the case scheduled to go to trial after Wilson's, so that the investigator had ample time to conduct any follow-up necessary. Because the trial court addressed each of counsel's concerns and ensured that he and the investigator had unlimited access to the witness and ample time to complete whatever follow-up they deemed necessary, nothing further was required. In short, the court's ameliorative actions eliminated any prejudice caused by the State's discovery violation. Therefore, we find no abuse of discretion in the court's decision to allow Tate to testify and to deny the motion for a continuance.

Based on the foregoing, the judgment of the circuit court of Will County is affirmed.

Affirmed.

STOUDER, P.J., and SCOTT, J., concur.