Edward GARLINGTON,
Petitioner–Appellant,

v.

Michael O'LEARY and Neil F. Hartigan,
Respondents–Appellees.

No. 88–2049.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 4, 1989.

Decided July 17, 1989.

James B. Burns, Michael J. Allen, Keck Mahin & Cate, Chicago, Ill., for petitioner-appellant.

Jack Donatelli, Office of the Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUDAHY, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Edward Garlington, along with two codefendants, was convicted of murder in 1979 after a bench trial in the Circuit Court of Cook County, Illinois. On direct appeal, the Appellate Court of Illinois affirmed the judgment of conviction, *see People v. Patterson*, 102 Ill.App.3d 844, 58 Ill.Dec. 542, 430 N.E.2d 574 (1981), and the Illinois Supreme Court denied Mr. Garlington's petition for leave to file an appeal. The Illinois courts also rejected Mr. Garlington's petition for post-conviction relief. Mr. Garlington is serving a thirty-year prison term at the Logan Correctional Center in Lincoln, Illinois.

In January 1987, Mr. Garlington filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois. The district court appointed counsel on his behalf. Mr. Garlington challenged his conviction on several grounds: (1) the state violated his rights under the fourteenth amendment's due process clause as interpreted in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to turn over a police report containing exculpatory evidence;[1] (2) his sixth amendment right of confrontation was violated by the introduction at trial of a codefendant's hearsay statement; and (3) the state failed to prove his guilt beyond a reasonable doubt in violation of the due process clause of the fourteenth amendment. The district court granted the state's motion for summary judgment. We now affirm.

---

1. Mr. Garlington has not appealed the district court's rejection of his *Brady* claim.

# I.

## Background

Mr. Garlington, along with Eli Wilson and Larry Patterson, was charged with the murder of Renell Hentley. The Appellate Court of Illinois' summary of the facts underlying Mr. Garlington's conviction must serve as the basis of our review. *See* 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981). We therefore set forth that account.

Yvonne Amos, Garlington's girlfriend at the time of the events in question, was the principal State witness and testified that on January [19],[2] 1979, the evening prior to Hentley's death, she was informed that Garlington's brother Reginald had been shot in a pool hall. (Reginald died and Garlington was a State witness in the successful prosecution of his two killers.) Amos spent that night at the Garlington home with several others, including Hentley and the defendants. At approximately 8:00 a.m. the following day Garlington instructed her to awaken Hentley and to instruct him to go to Garlington's bedroom. Hentley was followed into the room by defendants and Jimmie Key. Amos heard scuffling noises coming from the bedroom and she heard Hentley say that they had the wrong man. Garlington and Key came out of the bedroom two or three times. On one such occasion Garlington said, "It's going to be all right," to which Key replied, "We're going to take care of him." When the five men came out of the bedroom, Amos described Hentley as having his hair sticking up, a red face, wrinkled clothes, and looking "satisfied." She then saw Wilson, Patterson, Key and Hentley go out the back door. She did not see Garlington go out. About 20 minutes later the men returned without Hentley. One of them took off a black jacket and stuffed it in a box or behind some clothes. Amos testified that she had given several prior statements which conflicted with her trial testimony. She gave these statements out of fear and stated that she was telling the truth at trial.

Kenneth Green, a 12–year–old neighbor, testified for the State that at approximately 10:00 a.m. he saw five men emerge from Garlington's yard. He could identify only Hentley. One of the men punched Hentley while the others surrounded him. Green then saw the man, wearing a black coat, drag Hentley to the garage and strike him over the head with a bottle. At this point Green ran to a neighbor's home at which time he heard 5 or 6 shots. After a few minutes Green returned to the alley where he observed a trail of blood.

Officer Anthony Barry of the Chicago Police Department testified that at 10:10 a.m. he found Hentley dead in the alley. He observed a trail of blood from the body to the alley behind the Garlington residence where he also found a broken bottle. Hentley had $105.00 in his pockets.

Donna Garlington, Garlington's sister, testified for the defense that Amos left the Garlington home at about 2:00 a.m. the morning of Hentley's murder and did not return until that afternoon or evening. She further testified that Hentley himself left the residence about 4:45 a.m. and did not return.

Lillian Ward, a funeral director, visited the Garlington residence to make funeral arrangements. She was there, on January 20, at 9:10 or 9:15 a.m. for about 30 minutes. The atmosphere was quiet, and she heard no fighting or scuffling. She also testified that her notes supported her time sequence.

*Patterson*, 58 Ill.Dec. at 544–45, 430 N.E.2d at 576–77. The Appellate Court of Illinois also summarized the testimony of Officer Edward Beale of the Chicago Police Department. Officer Beale testified that, Mr. Garlington, while at the hospital on the

---

**2.** The opinion of the Appellate Court of Illinois states that Ms. Amos' testimony related to the events of the evening of January 18, 1979 and the following morning. *See Patterson*, 58 Ill. Dec. at 544, 430 N.E.2d at 576. In fact, Ms. Amos testified as to the events of the evening of January *19* and the following morning. *See* Tr. at 29.

night his brother was shot and killed, said to a friend, "Well let's go, we'll take care of this, we don't need no police." 58 Ill. Dec. at 545, 430 N.E.2d at 577.

## II.

### Analysis

#### A. *Right to confrontation*

As noted above, Ms. Amos testified that Mr. Garlington and Jimmie Key came out of Mr. Garlington's bedroom several times on the morning of Mr. Hentley's murder. On one such occasion, Mr. Garlington said, "Its going to be all right," and Mr. Key said, "We're going to take care of him." Mr. Key's statement was admitted at trial. Mr. Garlington asserts that Ms. Amos' testimony regarding Mr. Key's statement was hearsay and that admitting the statement violated Mr. Garlington's sixth amendment right to confrontation.[3] The Appellate Court of Illinois concluded that Mr. Key's statement was properly admitted under the coconspirator exception to the hearsay rule, since the state had made a *prima facie* showing that a conspiracy existed among the defendants. *See Patterson*, 58 Ill.Dec. at 546, 430 N.E.2d at 578. Although the district court noted that the Appellate Court of Illinois had improperly applied the *prima facie* standard rather than deciding, as required by *Bourjaily v. United States*, 483 U.S. 171, 176, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144 (1987), whether the elements of the coconspirator exception had been established by a preponderance of the evidence, *see Garlington v. O'Leary*, No. 87 C 871, mem. op. at 10–11, 1988 WL 37790 (N.D.Ill. April 18, 1988); R.30 at 10–11 [hereinafter Mem. op.], the district court concluded that the state's evidence did "make[ ] it more likely than not that a conspiracy existed and that Garlington and Key were members of it." *Id.* at 13. Thus, the court held that Mr. Key's statement fell within the coconspirator exception to the hearsay rule, and admission of

the statement did not violate Mr. Garlington's sixth amendment right to confrontation.

The obligation of Illinois is to employ in its criminal proceedings an evidentiary rule that satisfies the confrontation clause of the federal Constitution. *See Pointer v. Texas*, 380 U.S. 400, 403–04, 85 S.Ct. 1065, 1067–68, 13 L.Ed.2d 923 (1965) (holding that the confrontation clause is applicable to the states through the fourteenth amendment). In *Bourjaily*, the Supreme Court held that a coconspirator's statement that is admissible under Fed.R.Evid. 801(d)(2)(E) satisfies the confrontation clause. *See* 483 U.S. at 182–84, 107 S.Ct. at 2782–83. While the federal rule is quite obviously not directly applicable to this state proceeding, we can use it as a helpful guide in assessing the admission of the statement by the Illinois court pursuant to Illinois evidentiary rules. If the Illinois ruling would have satisfied Fed.R.Evid. 801(d)(2)(E), it will also satisfy the constitutional requirement. Rule 801 provides that a statement offered against a party is not hearsay if it is a "statement by a coconspirator of a party [made] during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). Thus, in order for Mr. Key's statement to be admissible under Rule 801, the state must have established three preliminary facts: (1) that a conspiracy existed, (2) that Mr. Garlington and Mr. Key were involved in the conspiracy, and (3) that the statement was made "during the course and in furtherance of the conspiracy." Each of these factual elements must be established by a preponderance of the evidence. *See Bourjaily*, 483 U.S. at 176, 107 S.Ct. at 2779; *United States v. D'Antoni*, 874 F.2d 1214, 1217 (7th Cir. 1989). On appeal, Mr. Garlington maintains that the district court erred in holding that the statement was admissible under Rule 801 since the state failed to prove the last two elements by a preponderance of the evidence.

---

**3.** The sixth amendment's confrontation clause, made applicable to the states through the fourteenth amendment, *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Pointer v. Texas*, 380 U.S. 400, 403–04,

85 S.Ct. 1065, 1067–68, 13 L.Ed.2d 923 (1965), states that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

### 1. *Participation in the conspiracy*

Mr. Garlington asserts that the evidence presented by the state at trial did not prove that he was a participant in the conspiracy to murder Renell Hentley, since it merely showed that he was associated with the coconspirators and may have had an opportunity to join the conspiracy. Mr. Garlington, however, does not now dispute the fact that the state has proven the existence of a conspiracy. While we have noted that mere association with conspirators is insufficient by itself to prove participation in a conspiracy,[4] the circumstances surrounding a party's actions can support an inference of participation in a conspiracy. *United States v. Zambrana*, 841 F.2d 1320, 1346 (7th Cir.1988). " 'Presence has been sufficient evidence of knowing participation in a conspiracy when there were suspicious circumstances, and the existence of the conspiracy was already established.' " *Id.* (quoting *United States v. Covelli*, 738 F.2d 847, 861 (7th Cir.), *cert. denied*, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984)).

■ The circumstances surrounding Mr. Garlington's activities on January 19 and 20, 1979 clearly support the conclusion that he was a participant in a conspiracy to murder Renell Hentley. Officer Beale testified that Mr. Garlington himself said, on the night of his brother's murder, that "we'll take care of this, we don't need no police." In addition, Mr. Garlington was not merely present in the bedroom when Mr. Hentley was heard saying that "they had the wrong man"; rather, Mr. Garlington himself ordered Ms. Amos to awaken Mr. Hentley and instruct him to go to the bedroom. Also, Kenneth Green testified that he saw five men, one of whom was Renell Hentley, leave the Garlington yard just before Mr. Hentley was shot. Other aspects of Kenneth Green's testimony were corroborated by the police. While Ms. Amos says that she did not see Mr. Garlington leave the house with the other four men, her testimony clearly places five men in the house that morning: Mr. Garlington, his two codefendants, Renell Hentley, and Jimmie Key. Thus, Mr. Garlington could well have been one of the five men Kenneth Green saw leaving the Garlington yard. Taken together, this evidence supports the conclusion that Mr. Garlington was an active participant in a conspiracy to kill Renell Hentley. This case is thus distinguishable from *United States v. Williams*, 798 F.2d 1024, 1028–30 (7th Cir. 1986), where the defendant was merely present on certain occasions while her husband engaged in drug transactions. Unlike Mr. Garlington, she had no other "apparent involvement in the conspiracy." 798 F.2d at 1029. The district court did not err in concluding that the evidence presented in this case made it more likely than not that Mr. Garlington, his codefendants, and Jimmie Key were participants in a conspiracy to murder Renell Hentley.

### 2. *Statement made "during the course of and in furtherance of the conspiracy"*

Mr. Garlington also maintains that the district court's rejection of his sixth amendment claim was erroneous since the state failed to prove by a preponderance of the evidence that the statement was made in furtherance of the conspiracy. He asserts that it is unclear whether the statement was made to him or to Ms. Amos, and he contends that the statement cannot be interpreted as furthering the conspiracy or assisting the conspirators to achieve their objectives.

Our review of the proceedings in the district court reveals that Mr. Garlington did not present this particular argument to the district court. Although Mr. Garlington recognized that, in order to satisfy the coconspirator exception to the hearsay rule, a statement must have been made in furtherance of the conspiracy, *see* R.28 at 8–9 (Petitioner's Response to Motion for Summary Judgment),[5] he did not argue that

---

**4.** *See, e.g., United States v. Williams*, 798 F.2d 1024 (7th Cir.1986); *United States v. West*, 670 F.2d 675 (7th Cir.), *cert. denied*, 457 U.S. 1124,

102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982); *United States v. Quintana*, 508 F.2d 867 (7th Cir.1975).

**5.** Mr. Garlington's petition for a writ of habeas corpus was filed *pro se*. Counsel, however, was

failure to prove the "in furtherance" element precluded application of the coconspirator exception in this case. Rather, he maintained that the Appellate Court of Illinois' finding that Mr. Key's statement satisfied the coconspirator exception was flawed in two other respects: (1) the court required only a *prima facie* showing that a conspiracy existed, rather than proof by a preponderance of the evidence; and (2) the court improperly relied on hearsay evidence in finding that a *prima facie* showing had been made. *See* R.28 at 9. Mr. Garlington argued that his right to confrontation had been violated since the nonhearsay evidence presented by the state failed to show either the existence of a conspiracy or his participation in a conspiracy. *Id.* at 9–11. The state's alleged failure to show that the statement was made in furtherance of a conspiracy, however, was not argued before the district court. In addition, in concluding that Mr. Garlington's sixth amendment right had not been violated, the district court's memorandum opinion did not discuss the "in furtherance" element of Rule 801(d)(2)(E). *See* Mem. op. at 9–13.

Ordinarily, Mr. Garlington's failure to present this argument to the district court would constitute a waiver of the argument. We have repeatedly held that a party that fails to press an argument before the district court waives the right to present that argument on appeal. *See, e.g., Moseley, Hallgarten, Estabrook & Weeden v. Ellis, Inc.,* 849 F.2d 264, 271 (7th Cir.1988), *Heller v. Equitable Life Assur. Soc.,* 833 F.2d 1253, 1261 (7th Cir.1987).[6] " 'It is a well-established general principle that "a litigant cannot present to this court as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide." ' " *Holleman v. Duckworth,* 700 F.2d 391, 394–95 (7th Cir.) (quoting *Stern v. United*

*States Gypsum, Inc.,* 547 F.2d 1329, 1333 (7th Cir.) (quoting *Desert Palace, Inc. v. Salisbury,* 401 F.2d 320, 324 (7th Cir. 1968)), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977)), *cert. denied,* 464 U.S. 834, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983). The fact that the general issue of the applicability of the coconspirator exception was before the district court would not normally be enough to allow Mr. Garlington to assert on appeal his newly raised argument based specifically on the "in furtherance" requirement of Rule 801(d)(2)(E). Mr. Garlington raised specific arguments as to why the coconspirator exception was not applicable; the "in furtherance" issue was not among them. The district court was not required to investigate the pleadings and evidence for additional arguments that might support Mr. Garlington's petition; it was Mr. Garlington's responsibility to raise the arguments that he seeks to use now on appeal. *See Walsh v. Mellas,* 837 F.2d 789, 800 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988); *Libertyville Datsun Sales v. Nissan Motor Corp.,* 776 F.2d 735, 737 (7th Cir.1985).

■ The state, however, does not contend that Mr. Garlington has waived this argument. Indeed, at oral argument the state expressly declined to argue that Mr. Garlington had waived the "in furtherance" issue. We have recognized that a defense of waiver can itself be waived by not being raised. *See United States v. Moya–Gomez,* 860 F.2d 706, 746 n. 33 (7th Cir.1988), *petition for cert. filed,* Feb. 17, 1989; *United States v. Holzer,* 840 F.2d 1343, 1349 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988); *United States v. Owokoniran,* 840 F.2d 373, 373–74 n. 1 (7th Cir.1987); *Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660,

appointed by the district court to assist Mr. Garlington, *see* R.22, and his response to the state's motion for summary judgment was prepared by appointed counsel. *See* R.28 at 15.

6. *See also United States v. Gironda,* 758 F.2d 1201, 1216 (7th Cir.) ("a defendant waives a particular argument for reversal if he failed to raise that contention at trial"), *cert. denied,* 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985);

*Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir.1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.").

663 (7th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987); *Lynk v. LaPorte Superior Court No. 2,* 789 F.2d 554, 565 (7th Cir.1986). Because it is our practice to consider only those arguments presented to us, we cannot conclude, under the circumstances of this case, that Mr. Garlington has waived the "in furtherance" issue by failing to raise that issue in the district court. *See Andrews v. United States,* 817 F.2d 1277, 1278–79 n. 1 (7th Cir.) (petitioner raised issues in § 2255 petition that he had failed to raise on direct appeal; because the government failed to make a waiver argument, court declined to address waiver issue) ("A state may waive reliance on waiver by its inattention to the issue."), *cert. denied,* 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987).[7] Therefore, we shall address the merits of the contention Mr. Garlington has presented to us on appeal.

Despite the state's insistence that the "in furtherance" issue is properly before the court on appeal, the state has provided us with little reasoned argument explaining exactly how Mr. Key's statement furthered the objectives of the conspiracy. We find this omission troubling. Rule 801(d)(2)(E) requires that, in order to be admissible, a coconspirator's statement must have been made "during the course and in furtherance of the conspiracy." This is a *limitation* on the admissibility of coconspirators' statements that is meant to be taken seriously. *See* Fed.R.Evid. 801(d)(2)(E) advisory committee's note (explaining that, while Rule 801(d)(2)(D) takes a broader view of agency than does the coconspirator exception, "the agency theory of conspiracy is at best a fiction and ought not to serve as a basis for admissibility beyond that already established"); J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(E)[1] at

801–236 to –237 (1988) ("[S]ome courts construe this aspect of the rule so broadly 'that anything related to the conspiracy is found to be in furtherance of its objectives.' This, of course, is precisely the result the Advisory Committee sought to avoid by retaining the 'in furtherance' requirement.") (quoting *Developments in the Law—Criminal Conspiracy,* 72 Harv.L. Rev. 920, 985 (1959)). If the state hopes to use coconspirator's statements without running afoul of the sixth amendment's confrontation clause, it should be prepared to satisfy each of the elements of the coconspirator exception to the hearsay rule— including the "in furtherance" requirement of Rule 801(d)(2)(E).

A coconspirator's statement satisfies the "in furtherance" element of Rule 801(d)(2)(E) when the statement is "part of the information flow between conspirators intended to help each perform his role." *United States v. Van Daal Wyk,* 840 F.2d 494, 499 (7th Cir.1988). Statements that further the objectives of a conspiracy can take many forms, including statements made to recruit potential coconspirators, *see United States v. Shoffner,* 826 F.2d 619, 628 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987); statements seeking to control damage to an ongoing conspiracy, *see Van Daal Wyk,* 840 F.2d at 499, statements made to keep coconspirators advised as to the progress of the conspiracy, *see United States v. Potts,* 840 F.2d 368, 371 (7th Cir.1987); and statements made in an attempt to conceal the criminal objectives of the conspiracy, *see United States v. Kaden,* 819 F.2d 813, 820 (7th Cir.1987); *United States v. Xheka,* 704 F.2d 974, 985–86 (7th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed. 2d 682 (1983). However, mere "idle chatter," narrative declarations, and superflu-

---

**7.** *See also United States v. Kenngott,* 840 F.2d 375, 379 (7th Cir.1987) (court considered merits of issue raised for the first time in a § 2255 petition despite petitioner's failure to show cause for and prejudice from failure to raise the issue on direct appeal) ("A showing of 'cause and prejudice' ... is not jurisdictional; the government may waive the issue. Here the government did not raise the issue of 'cause and prejudice' until oral argument. Its failure to

brief the issue waives the issue before us.") (citation omitted); *Barrera v. Young,* 794 F.2d 1264, 1267–69 (7th Cir.1986) (state executive branch may forfeit the protection of the waiver doctrine of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), by inattention to it) ("If a state authorizes its Attorney General to surrender the protection of some principle of law on behalf of the state, no principle of federal law interferes.").

ous casual conversations do not constitute statements "in furtherance" of the conspiracy. *See Van Daal Wyk*, 840 F.2d at 499; *Potts*, 840 F.2d at 371; Weinstein's Evidence, *supra*, ¶ 801(d)(2)(E)[1] at 801–235, 801–238 to –240.

In order to satisfy the "in furtherance" requirement, a coconspirator's statement "need not have been exclusively, or even primarily, made to further the conspiracy." *Shoffner*, 826 F.2d at 628. Moreover, a court may conclude that the statement was in furtherance of the conspiracy even though " 'the statement [was] susceptible of alternative interpretations.' " *Id.* (quoting *United States v. Mackey*, 571 F.2d 376, 383 (7th Cir.1978)). The requirement is satisfied so long as " 'some reasonable basis exists for concluding that the statement furthered the conspiracy.' " *Id.; see also United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C.Cir.) (per curiam) (statement is in furtherance of the conspiracy if the statement "can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy"), *cert. denied*, — U.S. —, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988). In addition, "[w]hether a particular statement tends to advance the objectives of the conspiracy can only be determined by examination of the context in which it is made." Weinstein's Evidence, *supra*, ¶ 801(d)(2)(E)[1] at 801–240 to –241 (footnotes omitted).

A reasonable basis does exist for concluding that Mr. Key's statement, "[w]e're going to take care of him," furthered the objectives of the conspiracy. As then–Judge Kennedy explained in *United States v. Mason*, 658 F.2d 1263, 1270 (9th Cir.1981), "[s]tatements of reassurance ... are in furtherance of a conspiracy." In *Mason*, a federal agent posing as a cocaine buyer asked a conspirator about the continued viability of the conspirator's source. In response, the conspirator explained that his supplier could not have been "scared off." The court concluded that the "sensible interpretation of this utterance [was] that it was to calm and reassure [the buyer], and as such it was in furtherance of the conspiracy." *Id.*[8] The statement at issue in this case was made by Mr. Key just after he and Mr. Garlington had emerged from the bedroom where Mr. Hentley was apparently being beaten. Although Mr. Key's statement may be open to alternative interpretations, it can reasonably be characterized as an attempt to calm and reassure Mr. Garlington and to bolster his confidence that the goal of the conspiracy could be achieved. Such a statement may have made it more likely that Mr. Garlington would carry out his role in the conspiracy. Characterized in this way, the statement did further the objectives of the conspiracy. This characterization of the statement is reinforced by the fact that, after Renell Hentley had been killed, Mr. Key said to Mr. Garlington, "I told you we would take care of him." Tr. at 48.[9] This

---

8. *See also United States v. Yarbrough*, 852 F.2d 1522, 1535–36 (9th Cir.1988) (statements made to reassure conspirators of a conspiracy's continued existence or to allay a coconspirator's fears are "in furtherance" of the conspiracy), *cert. denied*, — U.S. —, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988); *United States v. Mealy*, 851 F.2d 890, 901 (7th Cir.1988) (coconspirators' statements reassuring each other of trustworthiness were made in furtherance of the conspiracy); *United States v. Castro*, 776 F.2d 1118, 1126 (3d Cir.1985) ("statements that 'provide reassurance, serve to maintain trust and cohesiveness between [the conspirators], or inform each other of the current status of the conspiracy,' further the ends of the conspiracy") (quoting *United States v. Ammar*, 714 F.2d 238, 252 (3d Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983)), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986); *United States v. Sandoval–Villalvazo*, 620 F.2d 744, 747 (9th Cir.1980) (coconspirator's statements that tended to assure potential drug buyer that he had a real source of supply were "in furtherance" of the conspiracy); *United States v. Cambindo Valencia*, 609 F.2d 603, 632 (2d Cir.1979) (same), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980).

9. Ms. Amos testified that, on the evening of Renell Hentley's death, she overheard the following conversation among Mr. Garlington (Eddie) and the coconspirators:

Q. Who did you hear talking?
A. I heard Eddie.
Q. Do you recall what Eddie said?
A. Eddie said that Renell betrayed Reggie.
Q. Did you hear anyone else ta[l]k?
A. Jimmie Key.

reference to the earlier statement suggests that the earlier statement had been intended to reassure Mr. Garlington that the conspiracy's goal could be achieved. Because the "participation" and "in furtherance" elements of Rule 801(d)(2)(E) have been satisfied, Mr. Garlington's sixth amendment challenge to the admission of Mr. Key's statement must be rejected.

## B. *Sufficiency of the evidence*

■ Mr. Garlington also maintains that his right to due process of law was violated because the state failed to present sufficient evidence to prove that he was guilty of murder beyond a reasonable doubt. When assessing the sufficiency of the evidence supporting a state conviction on habeas review, we must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Wandick v. Chrans*, 869 F.2d 1084, 1089 (7th Cir.1989); *Shore v. O'Leary*, 833 F.2d 663, 666 (7th Cir.1987). Mr. Garlington argues that the entirely circumstantial evidence presented in this case "admits of the reasonable hypothesis" that he did not intend Renell Hentley to be murdered. *See* Appellant's Br. at 15. Since this reasonable alternative hypothesis exists, he maintains that a rational factfinder could not have found him guilty beyond a reasonable doubt. The district court, however, concluded that sufficient evidence had been presented to allow a finding that Mr. Garlington was accountable for Mr. Hentley's murder. *See* Mem. op. at 13–14. We agree.

Mr. Garlington's argument ignores the requirement that, on habeas review of the sufficiency of the evidence, the evidence presented must be viewed in the light most favorable to the prosecution. Mr. Garlington's ability to fashion an innocent explanation of what happened on the morning of

Q. What did Jimmie Key say?
A. He said, "I told you we would take care of him."

Renell Hentley's murder does not alter the fact that a rational factfinder, viewing the evidence in the light most favorable to the state, could have found him guilty beyond a reasonable doubt. Mr. Garlington was one of five men (himself, his two codefendants, Jimmie Key, and Renell Hentley) present in a bedroom in the Garlington home on the morning of Mr. Hentley's murder. Ms. Amos testified that she heard scuffling noises coming out of the room and that she heard Mr. Hentley say that they had the wrong man. Ms. Amos also testified that she heard Mr. Garlington say that "Renell betrayed Reggie [Mr. Garlington's brother]." Tr. at 47. Kenneth Green testified that he saw five men present in the alley behind the Garlington home just prior to Mr. Hentley's murder. The trial court could reasonably have inferred that Mr. Garlington was one of those five men. In addition, the trial court could reasonably have found that Mr. Garlington was the leader of a conspiracy to murder Mr. Hentley; his statement after the murder of his brother Reggie that "we'll take care of this, we don't need no police," along with the fact that he ordered Ms. Amos to awaken Mr. Hentley and instruct him to go into the bedroom on the morning of the murder, suggest that Mr. Garlington had a central role in the enterprise. Thus, the district court properly rejected Mr. Garlington's sufficiency of the evidence claim.

### Conclusion

The judgment of the district court is affirmed. The admission of Jimmie Key's out-of-court statement was not a violation of Mr. Garlington's sixth amendment right to confrontation, and his sufficiency of the evidence claim is without merit. The district court, therefore, properly granted the state's summary judgment motion.

AFFIRMED