**UNITED STATES of America, Plaintiff,**

v.

**T.J. MORROW, et al., Defendants.**

**No. 97 CR 380.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 5, 1997.

Ronald D. May, U.S. Attorney's Office, Chicago, IL, for Plaintiff.

Steven Shobat, Cesar & Shobat, Chicago, IL, for T.J. Morrow.

Robert L. Edwards, Chicago, IL, for Sandra McKee.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is the government's pretrial written proffer of evidence, submitted pursuant to *United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978), summarizing the evidence that the government expects to adduce at trial to establish that a conspiracy existed; that each of the defendants participated in the conspiracy; and that the co-conspirator statements sought to be introduced were made during the course of and in furtherance of the conspiracy.

Under Federal Rule of Evidence 801(d)(2)(E), statements made by a co-conspirator of a defendant during the course of and in furtherance of the conspiracy are not hearsay when offered against the defendant. Before these statements will be allowed into evidence, however, the court must determine that the government has demonstrated, by a preponderance of the evidence, that as to each defendant "(1) a conspiracy existed, (2) the defendant and the declarant were members thereof, and (3) the proffered statement(s) were made during the course of and in furtherance of the conspiracy." *United States v. Cox,* 923 F.2d 519, 526 (7th Cir. 1991). *See also United States v. Perez,* 28 F.3d 673, 677 (7th Cir.1994); *United States v. Ford,* 21 F.3d 759, 763 (7th Cir.1994); *United States v. Wesson,* 33 F.3d 788, 796 (7th Cir. 1994), *cert. denied,* 513 U.S. 1100, 115 S.Ct. 773, 130 L.Ed.2d 668 (1995) (each applying the preponderance standard to all three prongs of the admissibility test). In making this determination, the court may examine the hearsay statements sought to be admitted. *Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987).

## A. *Existence of the conspiracy*

Count One charges defendants T.J. Morrow, Anthony Morrow, and Sandra McKee with conspiring to possess with intent to distribute and to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). Count Six charges defendants T.J. Morrow and Anthony Morrow with conspiring to possess a firearm, both previously having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). The remaining counts charge the defendants with various substantive offenses. The conspiracies encompass the various criminal conduct charged in the other counts in the indictment. In its *Santiago* proffer, the government has provided detailed information about each alleged conspiracy. The following information is only a summary of the government's proffered evidence, which is considerable.

■ According to the government's proffer, beginning on April 23, 1996, a confidential informant working with law enforcement officers had numerous conversations and meetings with T.J. Morrow related to the informant's purchase of crack cocaine from T.J. Morrow. The law enforcement officers supplied money to the informant for the crack cocaine buys, and gave the informant a recording device to record his conversations with T.J. Morrow. On April 24, May 3, May 16, and October 4, 1996, the informant bought crack cocaine from T.J. Morrow, and then turned the crack cocaine over to the law enforcement officers. (Government's Proffer at 12–20.) Defendants Anthony Morrow and Sandra McKee facilitated the October 4, 1996, drug buy. (*Id.* at 17–20.)

In addition to crack cocaine, the informant also bought four guns from T.J. Morrow, on May 27, August 8, October 24, and October 29, 1996. (*Id.* at 20.) Each purchase was carried out under the supervision of law enforcement officers, who conducted surveillance and monitored a recording device installed in the informant's car. (*Id.*) Moreover, the law enforcement officers recorded phone conversations between the informant and T.J. Morrow preceding the October 24, 1996, transaction. Anthony Morrow was involved in the October 24, 1996, transaction. (*Id.* at 21–22.)

The evidence proffered by the government and summarized above shows by a preponderance of the evidence that a narcotics conspiracy existed between T.J. Morrow, Anthony Morrow, and Sandra McKee, and that a firearms conspiracy existed between T.J. Morrow and Anthony Morrow.

## B. *Each defendant's participation in the conspiracy*

■ The court may consider the "words and deeds" of each defendant in establishing his participation in the alleged conspiracy. *United States v. Martinez de Ortiz,* 907 F.2d 629, 632–35 (7th Cir.1990), *cert. denied,* 498 U.S. 1029, 111 S.Ct. 684, 112 L.Ed.2d 676 (1991). The court may "reach the necessary level of satisfaction [to admit co-conspirator statements] at least in part on the basis of hearsay." *Id.* at 634.

■ A defendant joins a conspiracy if he agrees with a conspirator to one or more of the common criminal objectives set forth in the indictment; it is immaterial whether the defendant knows, has met with, or has agreed with every conspirator. *United States v. Boucher,* 796 F.2d 972, 975 (7th Cir.1986); *United States v. Balistrieri,* 779 F.2d 1191, 1225 (7th Cir.1985), *cert. denied sub nom. DiSalvo v. United States,* 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986). A defendant, even if not an "agreeing" member of the conspiracy, also may be found guilty of conspiracy if he knew of the conspiracy's existence at the time of his acts, and his acts knowingly aided and abetted the conspiracy. *United States v. Kasvin,* 757 F.2d 887, 890–91 (7th Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985).

■■ Furthermore, the government need not prove that a defendant knew each and every detail of the conspiracy or played more than a minor role in the conspiracy. *United States v. Liefer,* 778 F.2d 1236, 1247 n. 9 (7th Cir.1985); *United States v. Towers,* 775 F.2d 184, 189 (7th Cir.1985). In addition, any of the defendants may be found to have participated in a conspiracy even if they joined or terminated their relationship with core conspirators at different times. *United States v. Ramirez,* 796 F.2d 212, 215 (7th Cir.1986);

*United States v. Noble,* 754 F.2d 1324, 1329 (7th Cir.), *cert. denied,* 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985). The determination is individual; each defendant is entitled to separate consideration of his alleged participation. Thus, the court will consider each defendant in turn.

### 1. T.J. Morrow

According to the government's proffer, T.J. Morrow played the lead role in the narcotics conspiracy. T.J. Morrow sold thousands of dollars' worth of crack cocaine to the informant on several occasions. T.J. Morrow's conversations with the informant indicated that T.J. Morrow purchased cocaine for resale as crack cocaine, and set the prices for the crack cocaine he sold. On all occasions, T.J. Morrow dealt directly with the informant, took the informant's cash, and delivered the drugs to the informant. (*See* Government's Proffer at 12–20.)

In the firearms conspiracy, the informant arranged to buy guns from T.J. Morrow, and the transactions took place in the driveway of T.J. Morrow's home. During the October 24, 1996, firearm transaction, T.J. Morrow directed the activities of Anthony Morrow, who assisted in the transaction. At the time of the transactions, T.J. Morrow had been convicted of a felony. (*See id.* at 20–22.)

### 2. Anthony Morrow

On October 3 and 4, 1997, Anthony Morrow relayed messages regarding a drug buy between T.J. Morrow and the informant. Anthony Morrow clearly had full knowledge about the October 4, 1996, drug transaction and was involved in facilitating it. (*See id.* at 17–18.)

On October 24, 1996, at T.J. Morrow's direction, Anthony Morrow retrieved a gun from T.J. Morrow's house for the informant. Anthony Morrow got in the informant's car, removed the gun from his waistband and gave it to the informant, and answered some questions about the gun for the informant. Again at T.J. Morrow's direction, Anthony got out of the car while T.J. Morrow and the informant completed the transaction. At the time of the transaction, Anthony Morrow had been convicted of a felony. (*See id.* at 21–22.)

### 3. Sandra McKee

On October 4, 1996, when the informant arrived at T.J. Morrow's house to buy crack cocaine, T.J. Morrow told the informant that he was getting his cousin, later identified as Sandra McKee, to buy the cocaine. T.J. Morrow asked the informant to give the money for the cocaine to McKee, but the informant declined. T.J. Morrow told the informant that McKee could be trusted, and had been out to get cocaine for T.J. Morrow plenty of times. The informant still declined. They agreed that they would go with McKee to the location where she would get the cocaine.

McKee followed the informant and T.J. Morrow to the location where she would buy cocaine. The informant gave money to T.J. Morrow, who gave it to McKee. McKee returned a short while later and handed T.J. Morrow a bag. T.J. Morrow opened the bag and pulled out several pieces of crack cocaine. T.J. Morrow and the informant returned to T.J. Morrow's house and completed the drug transaction. (*See id.* at 18–20.)

In sum, the government's proffer shows by a preponderance of the evidence that T.J. Morrow, Anthony Morrow, and Sandra McKee participated in the narcotics conspiracy, and T.J. Morrow and Anthony Morrow participated in the firearms conspiracy.

### C. *Statements made in furtherance of the conspiracy*

■ In determining whether a statement was made in furtherance of the conspiracy or joint venture, courts look for a reasonable basis upon which to conclude that the statement furthered the conspiracy. *United States v. Shoffner,* 826 F.2d 619, 628 (7th Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987). Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and still be in furtherance of the conspiracy; the statement need not have been exclusively, or even primarily, made to further the conspiracy in order to be admissible under the conspiracy exception. *Id.*

■ In *Garlington v. O'Leary,* 879 F.2d 277 (7th Cir.1989), the Seventh Circuit reviewed an extensive array of decisions on this issue:

A co-conspirator's statement satisfies the "in furtherance" element of Rule 801(d)(2)(E) when the statement is "part of the information flow between conspirators intended to help each perform his role." *United States v. Van Daal Wyk,* 840 F.2d 494, 499 (7th Cir.1988). Statements that further the objectives of a conspiracy can take many forms, including statements made to recruit potential co-conspirators, *see United States v. Shoffner,* 826 F.2d 619, 628 (7th Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987); statements seeking to control damage to an ongoing conspiracy, *see Van Daal Wyk,* 840 F.2d at 499; statements made to keep co-conspirators advised as to the progress of the conspiracy, *see United States v. Potts,* 840 F.2d 368, 371 (7th Cir.1987); and statements made in an attempt to conceal the criminal objectives of the conspiracy, *see United States v. Kaden,* 819 F.2d 813, 820 (7th Cir.1987); *United States v. Xheka,* 704 F.2d 974, 985–86 (7th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983).

*Garlington,* 879 F.2d at 283. However, "mere 'idle chatter,' narrative declarations, and superfluous casual conversations" are not statements made in furtherance of a charged conspiracy. *Id.* at 283–84. Finally, it is immaterial that statements otherwise in furtherance of the conspiracy were made to a government witness, informant, or agent. *United States v. Mealy,* 851 F.2d 890, 901 (7th Cir.1988).

The government has failed to specify which statements it seeks to have admitted. However, the court finds that the proffer itself, in describing the conversations between the alleged co-conspirators, adequately sets forth the statements that the government will seek to introduce at trial. These statements pertain to the sale and purchase of crack cocaine, including the prices of different amounts of crack cocaine; arranging meetings to carry out drug transactions; whether the co-conspirators could fulfill an order;

whether crack cocaine was ready to be delivered; and who would buy cocaine for a subsequent resale. (*See* Government's Proffer at 12–20.) The statements also pertain to the sale and purchase of firearms, including whether a gun was for sale; the cost of the gun; whether the gun was ready for delivery; who would retrieve the gun from a certain location; and whether the gun was loaded and what type of ammunition it took. (*See id.* at 20–22.)

These statements appear to fit into the definitions of statements in furtherance of a conspiracy set forth in *Garlington,* 879 F.2d at 283–84. That is, they were "part of the information flow between [the] conspirators [and were] intended to help each perform his role." *Van Daal Wyk,* 840 F.2d at 499. Thus, the government has shown by a preponderance of the evidence that the statements it seeks to have admitted were made in furtherance of the narcotics and firearms conspiracies.

### *CONCLUSION*

After reviewing the government's written proffer, the court finds that the government has established, by a preponderance of the evidence, that the co-conspirator statements at issue fall within the scope of Federal Rule of Evidence 801(d)(2)(E). Based upon the *Santiago* proffer, it is more likely than not that a conspiracy existed, that defendants participated in the conspiracy, and that the statements sought to be admitted were made during the course of and in furtherance of the conspiracy. Therefore, as a preliminary matter, the statements are not hearsay and are admissible against defendants.

■ In this jurisdiction, however, the trial judge has the option to admit conditionally the co-conspirator statements evidence subject to the government's actual proof of the matters at trial. *Cox,* 923 F.2d at 526; *Santiago,* 582 F.2d at 1131. The court exercises that option here.

Accordingly, for the foregoing reasons, the government's evidentiary proffer as to co-conspirator statements is conditionally admitted under Federal Rules of Evidence 104(a)

and (b) and 801(d)(2)(E), subject to proof at trial.