**Armando BECERRILL, Petitioner–Appellant,**

v.

**Jerry STERNES, Respondent–Appellee.**

No. 01–2424.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 14, 2001.*

Decided Dec. 28, 2001.

Before FAIRCHILD, RIPPLE and WILLIAMS, Circuit Judges.

### ORDER

Armando Becerrill was convicted in Illinois state court of armed violence, unlawful possession of a controlled substance with intent to deliver, and controlled-substance trafficking, and was sentenced to forty years' imprisonment. After exhausting his state-court remedies, Becerrill petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, claiming, among other things, that the admission at trial of certain out-of-court statements violated his confrontation rights under the Sixth Amendment. The district court, while agreeing with Becerrill that his confrontation rights had been violated, concluded that the error was harmless and denied the petition. At the same time, the court granted a certificate of appealability on the confrontation claim only. We affirm.

The undisputed facts as found by the Illinois appellate court are as follows: In May 1992 Becerrill was riding in a car driven by codefendant Jose Salazar when they were stopped by police officer Daniel Gillette for speeding. As Salazar pulled the car over, Gillette saw Becerrill reach under the passenger seat and then adjust his cap. Gillette questioned each man separately regarding their destination, and Becerrill responded that they were going

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

to Chicago. Salazar, however, responded that they were traveling from California to New York, where Becerrill would stay for about fifteen days and then drive back alone to California. Both men had valid California driver's licenses, and registration documents indicated that the car belonged to a Curtis Lee Sessa of Tustin, California.

Noticing a heavy odor of air freshener, Gillette, with Salazar's consent, proceeded to search the car. A second officer, David Spahn, watched Becerrill and Salazar while Gillette performed the search. Spahn later testified at trial that during the search Becerrill repeatedly reached up toward his hat and had to be told to keep his hands at his sides.

In the trunk of the car, Gillette found two bags of men's clothing and a large number of rolled-up fifty-dollar bills. Gillette also noticed that there was seemingly unused space where the spare tire should have been. At that time a third officer, Craig Graham, arrived with a drug-trained dog who reacted positively to the presence of drugs in the rear of the vehicle. Gillette and Graham then checked under the car and saw fresh undercoating and some packages through a small hole in the underbody. Suspecting that the car had a hidden compartment, Graham drilled a hole into the underbody. White powder, which field-tested positive for cocaine, fell from the hole and also covered the drill bit.

Becerrill and Salazar were arrested and searched. Under Becerrill's cap the officers found a loaded semi-automatic pistol. A second semi-automatic weapon was found in the hidden compartment, along with a box of ammunition and forty-five kilograms of cocaine worth approximately ten-million dollars. The car contained no tools that could have been used to access the secret compartment, and the finger-prints on the cocaine packages did not match those of Becerrill or Salazar.

After the trials were severed, Becerrill moved in limine to exclude certain statements made by Salazar during the traffic stop. (Salazar did not testify at Becerrill's trial.) The trial court granted the motion in part, holding that the state could not introduce statements made by Salazar that Becerrill lived with Salazar's cousin in California, that the cousin owned the car and had loaned it to the two defendants jointly, that the car had no drugs or weapons in it, and that Salazar did not know how to access the secret compartment. The court did, however, admit Salazar's statements that he had been visiting California and that he and Becerrill were traveling to New York, where Becerrill would stay for about fifteen days before returning alone to California. On appeal the state appellate court affirmed, holding that Salazar's statements were admissible under Illinois's coconspirator exception to the hearsay rule.

In his § 2254 petition, Becerrill claims that the state trial court erred in admitting hearsay statements that tended to exonerate Salazar and inculpate Becerrill. The district court concluded that Becerrill was attempting to raise a confrontation claim under the Sixth Amendment, and construed the petition accordingly. But it appears that Becerrill never presented the constitutional argument to the Illinois appellate court—the state-court briefs attached to Becerrill's § 2254 petition make no mention of the Confrontation Clause, and the appellate court's opinion, while analyzing the admissibility of Salazar's statements under Illinois's evidentiary rules, does not address the question as a matter of federal constitutional law. Ordinarily, failure to present a federal claim to the state courts will result in a procedural default of that claim. *Chambers v.*

*McCaughtry,* 264 F.3d 732, 737–38 (7th Cir.2001). On the other hand, where a petitioner has asserted the federal claim "in terms so particular as to call to mind a specific constitutional right" or has alleged "a pattern of facts that is well within the mainstream of constitutional litigation," default may be avoided. *Verdin v. O'Leary,* 972 F.2d 1467, 1473–74 (7th Cir. 1992) (quotations omitted). In any event we need not decide the question in this case because the state has not argued procedural default. *Cossel v. Miller,* 229 F.3d 649, 653 (7th Cir.2000); *Hernandez v. Cowan,* 200 F.3d 995, 997 (7th Cir.2000). We shall therefore proceed to the merits.

The standard for admissibility of coconspirator declarations under the Confrontation Clause is the same as that under Federal Rule of Evidence 801(d)(2)(E). *Bourjaily v. United States,* 483 U.S. 171, 182–184, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. Dugan,* 902 F.2d 585, 589–90 (7th Cir.1990); *see also Garlington v. O'Leary,* 879 F.2d 277, 280 (7th Cir.1989) (in habeas corpus case, if state court's ruling on admissibility of coconspirator statements would have satisfied Rule 801(d)(2)(E), it will also satisfy constitutional requirements). For Salazar's statements to be admissible under Rule 801(d)(2)(E), the state had to show by a preponderance of the evidence that a conspiracy existed, that Becerrill and Salazar were involved in the conspiracy, and that the statements were made during the course and in furtherance of the conspiracy. *Garlington,* 879 F.2d at 280.

In his briefs on appeal, Becerrill maintains that the state failed to prove the first two elements—that a conspiracy existed and that he was a member of it. But as the state notes, Becerrill did not present these arguments to the district court. Accordingly, he has waived his right to make them on appeal. *Perry v. Sullivan,* 207 F.3d 379, 383 (7th Cir.2000); *Garlington,* 879 F.2d at 281–82.

We therefore focus our attention on the third element—whether Salazar's statements were made "in furtherance of" the conspiracy. That determination (which is a factual one, *United States v. Stephens,* 46 F.3d 587, 597 (7th Cir.1995); *United States v. Schumpert,* 958 F.2d 770, 773 (7th Cir. 1992); *accord, e.g., United States v. Bowman,* 215 F.3d 951, 960 (9th Cir.2000); *United States v. Gessa,* 971 F.2d 1257, 1261 (6th Cir.1992) (en banc)) has already been made by the Illinois appellate court. Specifically, in analyzing the issue under state evidentiary rules, the appellate court found that

> [Salazar's] statements were not made to exculpate [Salazar], but to further the successful transportation of the cocaine. The statements were made early during the stop, prior to Salazar giving permission to search the vehicle. The statements were made in order to convince the officer that Salazar and [Becerrill] had an innocent reason for traveling across the country, so they could continue on their way and safely deliver the valuable amount of cocaine hidden in the car. Because the statements were made during and in furtherance of a conspiracy and were not made to exculpate Salazar, the trial court did not err in admitting the hearsay statements under the coconspirator exception.

The district court, however, concluded that, contrary to the state court's ruling, Salazar's statements were not made in furtherance of the conspiracy because "they were statements that Salazar made to a police officer which tended to exculpate Salazar at the expense of Becerrill." In so holding, the district court appeared to treat the dispute as a mixed question of law and fact and reasoned that under 28 U.S.C. § 2254(d)(1) the state court's deci-

sion was an "unreasonable application" of federal law. But as we have already said, whether statements were made "in furtherance of" a conspiracy within the meaning of Rule 801(d)(2)(E) is an issue of *fact.* Thus, § 2254(e)(1), not § 2254(d)(1), supplies the relevant standard: namely, that a state court's factual determinations are presumed correct absent clear and convincing evidence to the contrary. *Mendiola v. Schomig,* 224 F.3d 589, 592 (7th Cir. 2000). And Becerrill has not come close to meeting this demanding burden. In fact, courts have routinely upheld the admission of coconspirator statements in circumstances similar to those in this case, on the ground that the statements were made "in furtherance of" the conspiracy and were thus non-hearsay under Rule 801(d)(2)(E). *E.g., United States v. Williams,* 272 F.3d 845, 856, 860 (7th Cir.2001) (upholding admission of coconspirator's statement to highway patrol officer during traffic stop that he was returning from trip to El Paso, Texas, which was defendant's city of residence; cocaine was later discovered in the car during consensual search); *Glenn v. Bartlett,* 98 F.3d 721, 723, 729 (2d Cir. 1996) (finding in habeas corpus case that there was no clear error in admitting coconspirator's statement to officer during traffic stop that he would have to talk to defendant about getting the combination for suitcase found in car trunk; suitcase was later found to contain drugs and firearms); *United States v. Lim,* 984 F.2d 331, 336 (9th Cir.1993) (finding that coconspirator's pre-arrest statement indicating he had innocent reason for traveling was meant to conceal conspiracy to transport drugs and was therefore made "in furtherance of" conspiracy); *United States v. Garcia,* 893 F.2d 188, 189–90 (8th Cir.1990) (finding that coconspirator's statement to mall-security guard that he had given suspected counterfeit bill to defendant was necessary to delay or prevent coconspirator's arrest and was thus made "in furtherance of" conspiracy to import counterfeit money); *United States v. Fahey,* 769 F.2d 829, 838–39 (1st Cir.1985) (finding that coconspirator's "false exculpatory statements" to FBI agent were made to conceal, and therefore to further the object of, the conspiracy); *United States v. Johnson,* 426 F.2d 1112, 1116 (7th Cir.1970) (finding that coconspirator's post-arrest statement was an alibi to cover up conspiratorial conduct and was therefore made "in furtherance of" conspiracy).

Because Becerrill failed to meet his burden under § 2254(e)(1), we need not consider the state's alternative argument that any error in admitting Salazar's statements was harmless.

AFFIRMED.